**COVINGTON**

BEIJING   BRUSSELS   DUBAI   FRANKFURT   JOHANNESBURG
LONDON   LOS ANGELES   NEW YORK   PALO ALTO
SAN FRANCISCO   SEOUL   SHANGHAI   WASHINGTON

Jonathan M. Sperling

Covington & Burling LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
T  +1 212 841 1153
jsperling@cov.com

By ECF                                                                                  September 30, 2020

Honorable Andrew L. Carter
United States District Court
Southern District of New York
40 Foley Square, Room 435
New York, NY 10007

      Re:    *Marjorie Kohlberg et al. v. Tom Birdsey et al.*, 20 Civ. 6250 (ALC);
              Long Point Defendants' Request for Pre-Motion Conference

Dear Judge Carter:

      Pursuant to Your Honor's Individual Practice Rule 2.A, we write on behalf of Defendants Long Point Capital, Inc., Long Point Capital Fund II, L.P., Long Point Capital Partners II, L.P., Long Point Capital Fund III, L.P., Long Point Capital Partners III, L.P. (collectively, "Long Point"), Ira Starr, Norman Scherr, and Eric Von Stroh (together with Long Point, the "LPC Defendants") to request a pre-motion conference prior to filing a motion to dismiss.

## I.     Background to the Dispute

      In 2011, certain Long Point funds invested in nominal defendant EYP Holdings, Inc.—a Delaware corporation that, through its subsidiaries, provided architectural and engineering services. Defendants Starr, Scherr, and Von Stroh were appointed to EYP's Board. On June 28, 2016, Long Point sold all of its shares in EYP Holdings. The Long Point sale transaction received unanimous consent from EYP Holdings' shareholders—all of whom were current and former EYP employees—and EYP's Board.

      EYP Holdings then consummated a merger transaction in which (1) EYP Holdings became a wholly-owned subsidiary of nominal defendant EYP Group Holdings (which in turn was wholly-owned by EYP's Employee Stock Ownership Plan managed by defendant Greatbanc as Trustee); (2) all outstanding EYP Holdings shares were canceled; and (3) the former EYP Holdings shareholders received so-called Group 1 and 2 promissory notes issued by EYP Group Holdings. This merger transaction also closed on June 28, 2016, and like the Long Point sale transaction, received unanimous EYP shareholder and Board consent. While different shareholders of EYP Holdings who surrendered stock as part of the Long Point sale or the merger received different *forms* of consideration—Long Point received cash and a note, while EYP's employee shareholders received a mix of Group 1 and 2 notes, warrants, tax payments, and cash—the *value* of the consideration each received was based on the same per-share valuation of EYP Holdings' shares.

**COVINGTON**

Honorable Andrew L. Carter
September 30, 2020
Page 2

Four years later, apparently disappointed with how the transactions turned out for them, four of the approximately 90 Group 1 and 2 noteholders who consented to and participated in these 2016 transactions have now filed this lawsuit, joined by four other noteholders of EYP entities. A fifth purported Group 2 noteholder, Plaintiff Sears, allegedly obtained her note in December 2016, six months after Long Point sold its EYP shares, but has joined this litigation. The remaining three Plaintiffs obtained notes and debt obligations from EYP Holdings at different times in 2015 and 2016.

## II.  Plaintiffs Must Comply with the PSLRA Before Responses Are Required

Plaintiffs have brought a federal securities class action, but have failed to comply with the basic requirements of the PSLRA. First, Plaintiffs did not file the certification that must accompany the Complaint. *See* 15 U.S.C. § 78u–4(a)(2). Second, Plaintiffs have not published the notice required to trigger the lead plaintiff appointment process, which the PSLRA required that they do within 20 days of filing the Complaint. *See* 15 U.S.C. § 78u–4(a)(3).

This Court should order Plaintiffs to comply with these requirements before Defendants are required to respond to the complaint. The PSLRA "sets out a detailed schedule of events for ascertaining lead plaintiff status" so that "a more seemly contest for lead plaintiff status begins" after a complaint is filed. *Gutman v. Sillerman*, 2015 WL 13791788, at *1 (S.D.N.Y. Dec. 8, 2015). Only after lead plaintiffs are appointed can lead counsel be selected and appointed by the Court. 15 U.S.C. § 78u–4(a)(3)(B)(v). And the operative pleading to which Defendants must respond cannot be determined until a lead plaintiff and lead counsel are appointed.

"The PSLRA is unequivocal and allows for no exceptions." *Gutman*, 2015 WL 12791788, at *1 (quoting *In re Telxon*, 67 F. Supp. 2d 803, 818 (N.D. Ohio 1999)). Putative class members must have the opportunity to "participate in the litigation and exercise control over the selection and actions of plaintiffs' counsel." *See In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42 (S.D.N.Y. 1998). Accordingly, the lead plaintiff and counsel appointment process should be completed before Defendants are required to respond to any Complaint.

## III.  If Defendants Must Respond Now, the Complaint Should be Dismissed

Dismissal as to all the LPC Defendants is warranted, for at least the following reasons.

<u>Counts 1 and 3 (Securities Fraud and Fraud)</u>: Plaintiffs have failed to plead any element of their fraud claims. To plead securities fraud based on alleged misstatements, Plaintiffs must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). Plaintiffs also must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* (quoting 15 § 78u–4(b)(2)). State law requires similarly specific pleading. *See, e.g.*, *Trenwick Am. Litig. Tr. v. Ernst & Young*, L.L.P., 906 A.2d 168, 208 (Del. Ch. 2006) (requiring particularized pleading for fraud claims, not "unspecific, broad-brush generalities"). And Plaintiffs must plead facts demonstrating reliance, damages, and causation. *See, e.g.*, *ATSI Commc'ns, Inc.*, 493 F.3d at 105 (requiring securities fraud plaintiffs to plead "that the plaintiff's reliance was the proximate cause of its injury").

**COVINGTON**

Honorable Andrew L. Carter
September 30, 2020
Page 3

The Complaint here does none of these things. It does not identify a single purportedly false statement, let alone attribute such a statement to any particular LPC Defendant or plead facts showing why such a statement was made with the requisite scienter, or identify any way in which any Plaintiff allegedly relied upon it. Additionally, if Plaintiffs claim fraud based on the transactions in which they obtained their notes—all of which occurred in 2015 and 2016—both the statute of limitations and the terms of the transaction documents bar Plaintiffs' claims.

Count 2 (Breach of Fiduciary Duty of Loyalty): To the extent Plaintiffs' claims arise out of the 2015 and 2016 transactions through which they obtained their notes, these claims are time-barred. *See, e.g.*, *In re Tyson Foods, Inc.*, 919 A.2d 563, 584 (Del. Ch. 2007) ("A three-year statute of limitations applies to breaches of fiduciary duty."). Plaintiffs also fail to allege that any LPC Defendant owed them any fiduciary duties. Plaintiffs generally allege that they were "minority stockholders," Compl. ¶ 156, but they do not specify, as to each Plaintiff, what entity the Plaintiff held stock in, and when. And with respect to their derivative claims, Plaintiffs do not plead either contemporaneous or continuous stock ownership, as Delaware law (which governs here) requires, nor adequately plead demand futility. To the extent Plaintiffs assert their claims as creditors, they cannot bring direct claims, and their allegation that "EYP [has] entered the zone of insolvency," *id.* ¶ 156, does not permit them to assert derivative claims. *See Quadrant Structured Prod. Co., Ltd. v. Vertin*, 115 A.3d 535, 546 (Del. Ch. 2015) (holding that (i) creditors lack derivative standing to bring fiduciary duty claims based on the "zone of insolvency," and (ii) "creditors cannot bring direct claims for breach of fiduciary duty"). In addition, contractual defenses bar Plaintiffs' fiduciary duty claims.

Counts 6 and 7 (Intentional and Constructive Fraudulent Conveyance): All Plaintiffs lack standing to bring these claims against any LPC Defendant. Plaintiffs also fail to allege facts sufficient to plead actual fraudulent conveyance, including without limitation to support actual intent by any LPC Defendant to defraud any Plaintiff. *Ki-Poong Lee v. So*, 2016 WL 6806247, at *3 (Del. Super. Ct. Nov. 17, 2016). The same failure exists for Plaintiffs' constructive fraudulent conveyance claim. *Id.* at *5 (holding that complaints that "recite[s] the statutory elements without offering sufficient factual support" are subject to dismissal).

Counts 4 (Conspiracy), 5 (Unjust Enrichment), and 8 (Reformation): Plaintiffs have no claim for unjust enrichment because contracts govern the subject matter at issue. *See Vichi v. Koninklijke Philips Elec. N.V.*, 62 A.3d 26, 58 (Del. Ch. 2012). Plaintiffs' additional counts in the Complaint—civil conspiracy and reformation or constructive trust—are meritless because there are no such independent substantive causes of action. *See 77 Charters, Inc. v. Gould*, 2020 WL 2520272, at *22 (Del. Ch. May 18, 2020) ("Civil conspiracy is not an independent cause of action"); *VTB Bank v. Navitron Projects Corp.*, 2014 WL 1691250, at *6 n.60 (Del. Ch. Apr. 28, 2014) ("[A] constructive trust is a remedy, not a substantive cause of action.").

Respectfully submitted,

/s/ *Jonathan M. Sperling*
Jonathan M. Sperling

cc:   All Counsel (via ECF)