**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

MARJORIE KOHLBERG, individually and as
Administrator of the Estate of Edmund Kohlberg,
DAVID EIJADI, individually and as Trustee of the
David Azziz Eijadi and Barbara Anne Eijadi
Revocable Trust Dated May 27, 2015, THOMAS
MCDOUGALL, individually and as Trustee of the
Thomas G. McDougall Trust dated November 17,
2005, PETER D. OTTAVIO, individually and as
Trustee of the Peter D. Ottavio Revocable Living
Trust dated February 19, 2016, MELISSA LASSOR,
MARY LOU JURKOWSKI, JASON STEINBOCK,
and BETSY SEARS, all on behalf of Themselves
and all others similarly situated and derivatively on
behalf of Nominal Defendants EYP HOLDINGS,
INC. and EYP GROUP HOLDINGS, INC.,

                    Plaintiffs,

      v.

TOM BIRDSEY, LONG POINT CAPITAL, INC.,
LONG POINT CAPITAL FUND II. L.P., LONG
POINT CAPITAL PARTNERS II, L.P., LONG
POINT CAPITAL FUND III, L.P., LONG POINT
CAPITAL PARTNERS III, L.P., IRA STARR,
NORMAN SCHERR, ERIC VON STROH, DAVID
WATKINS, and GREATBANC TRUST
COMPANY,

                  Defendants,

      and,

EYP HOLDINGS, INC.,
and EYP GROUP HOLDINGS, INC.,

                  Nominal Defendants.

Case No.: 20-cv-6250-ALC

---

**DAVID WATKINS' MEMORANDUM OF LAW IN SUPPORT OF HIS**
**MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

# TABLE OF CONTENTS

*Page*

TABLE OF CONTENTS ................................................................................................ ii

TABLE OF AUTHORITIES ...................................................................................... iii

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL BACKGROUND ...................................................................................... 3

ARGUMENT ................................................................................................................ 5

I.   Plaintiffs Fail to State a Fraud Claim Against Watkins (Count 3). ................... 7

   A.   Plaintiffs fail to allege any false representations by Watkins. ........................ 8

   B.   Plaintiffs fail to identify any specific omissions by Watkins. ........................ 11

   C.   Plaintiffs fail to plead intent, damages, or loss causation. ............................. 13

II.  Plaintiffs Fail to Satisfy the Elements of a Breach of Fiduciary Duty Claim (Count 2). 15

III. Plaintiffs Fail to Sufficiently State Their Other Common Law Claims Against Watkins (Counts 4, 5, 8 and 9). ............................................................................... 17

   A.   Plaintiffs fail to allege a civil conspiracy between Watkins and the other Defendants. ....................................................................................................... 17

   B.   Plaintiffs fail to allege an unjust enrichment claim. ....................................... 18

   C.   Plaintiffs fail to allege a reformation claim. .................................................... 19

   D.   Plaintiffs cannot plead constructive trust as a claim. ...................................... 20

CONCLUSION ............................................................................................................ 21

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*77 Charters, Inc. v. Gould*,
   2020 WL 2520272 (Del. Ch. May 18, 2020) ............................................... 17, 18

*Anwar v. Fairfield Greenwich Ltd.*,
   728 F. Supp. 2d 372 (S.D.N.Y. 2010) ................................................................ 20

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................... 6

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................... 6

*Bertoni v. Catucci*,
   498 N.Y.S.2d 902 (N.Y. App. Div. 1986)........................................................ 20

*Cantor Fitzgerald, L.P. v. Cantor*,
   724 A.2d 571 (Del. Ch. 1998)........................................................................... 18

*Chase Manhattan Bank v. Iridium Africa Corp.*,
   307 F. Supp. 2d 608 (D. Del. 2004) ............................................................ 19, 20

*Chill v. Gen. Elec. Co.*,
   101 F.3d 263 (2d Cir. 1996)............................................................................. 13

*Chimart Assocs. v. Paul*,
   66 N.Y.2d 570 (N.Y. 1986).............................................................................. 19

*Cortec Indus., Inc. v. Sum Holding L.P.*,
   949 F.2d 42 (2d Cir. 1991) ................................................................................. 7

*CVC Claims Litig. LLC v. Citicorp Venture Capital Ltd.*,
   No. 03-cv-7936, 2006 WL 1379596 (S.D.N.Y. May 18, 2006) ....................... 16

*Diplomat Direct Mktg. Corp. v. Stylesite Mktg., Inc. (In re Stylesite Mktg., Inc.)*,
   253 B.R. 503 (Bankr. S.D.N.Y. 2000) ............................................................ 20

*Dweck v. Nasser*,
   No. 1353–VCL, 2012 WL 161590 (Del. Ch. Jan. 18, 2012) ................................ 16

*Ellison v. Am. Image Motor Co.*,
   36 F. Supp. 2d 628 (S.D.N.Y. 1999).............................................................. 8, 9

*Gary Friedrich Ent., LLC v. Marvel Ent., Inc.*,
   713 F. Supp. 2d 215 (S.D.N.Y. 2010) ............................................................. 20

*George Backer Management Corp. v. Acme Quilting Co., Inc.*,
46 N.Y.2d 211 (N.Y. 1978).................................................................................... 20

*Gillespie v. St. Regis Residence Club*,
343 F. Supp. 3d 332 (S.D.N.Y. 2018) ................................................................... 19

*Hughes v. BCI Int'l Holdings, Inc.*,
452 F. Supp. 2d 290 (S.D.N.Y. 2006) ................................................................. 7, 9

*In re Pfizer Inc. S'holder Derivative Litig.*,
722 F. Supp. 2d 453 (S.D.N.Y. 2010) ................................................................... 18

*Kahn v. Lynch Commc'n Sys., Inc.*,
638 A.2d 1110 (Del. 1994) ..................................................................................... 16

*KDW Restructuring & Liquidation Servs. LLC v. Greenfield*,
874 F. Supp. 2d 213 (S.D.N.Y. 2012) .............................................................. 15, 16

*Koreag Controle et Revision, S.A. v. Refco F/X Assocs., Inc. (In re Koreag, Controle et Revision S.A.)*,
961 F.2d 341 (2d Cir. 1992), *cert. denied*, 506 U.S. 865 ...................................... 21

*Marino v. Grupo Mundial Tenedora, S.A.*,
810 F. Supp. 2d 601 (S.D.N.Y. 2011) ............................................... 7, 15, 16, 17, 18

*Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*,
500 F.3d 171 (2d Cir. 2007) ............................................................................ 10, 12

*Mills v. Polar Molecular Corp.*,
12 F.3d 1170 (2d Cir. 1993) ..................................................................................... 6

*Mount v. PulsePoint, Inc.*,
684 F. App'x 32 (2d Cir. 2017) ............................................................................... 18

*O'Brien v. Argo Partners, Inc.*,
736 F. Supp. 2d 528 (E.D.N.Y. 2010), *aff'd*, 426 F. App'x 36 (2d Cir. 2011) ................. 19, 20

*Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*,
85 F. Supp. 2d 282 (S.D.N.Y. 2000) ..................................................................... 13

*Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.*,
506 A.2d 173 (Del. 1986)....................................................................................... 15

*Sharp v. Kosmalski*,
386 N.Y.S.2d 72 (N.Y. 1976) ................................................................................. 21

*Stroud v. Grace*,
606 A.2d 75 (Del. 1992)......................................................................................... 17

*Teachers' Ret. Sys. of La. v. Aidinoff*,
   900 A.2d 654 (Del. Ch. 2006) ............................................................................ 20

*Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*,
   906 A.2d 168 (Del. Ch. 2006), *aff'd sub nom. Trenwick Am. Litig. Tr. v. Billett*, 931 A.2d 438
   (Del. 2007) ....................................................................................................... 7, 12

*Waggoner v. Laster*,
   581 A.2d 1127 (Del. 1990) ................................................................................ 20

*York Linings v. Roach*,
   No. 16622–NC, 1999 WL 608850 (Del. Ch. July 28, 1999) ............................... 15

## Rules

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 3

Fed. R. Civ. P. 23.1 .............................................................................................. 3

Fed. R. Civ. P. 8 ........................................................................................... 3, 6, 8

Fed. R. Civ. P. 9(b) ..................................................................................... passim

David Watkins respectfully submits this memorandum of law in support of his motion to dismiss, with prejudice, the Third Amended Complaint filed by Marjorie Kohlberg, David Eijadi, Thomas McDougall, Peter D. Ottavio, Melissa Lassor, Mary Lou Jurkowski, Jason Steinbock, and Betsy Sears (collectively, the "Plaintiffs") on March 8, 2021, ECF No. 97 (the "TAC"). The TAC is filed against Tom Birdsey, Long Point Capital, Inc., Long Point Capital Fund II, L.P., Long Point Capital Partners II, L.P., Long Point Capital Fund III, L.P., Long Point Capital Partners III, L.P., Ira Starr, Norman Scherr, Eric Von Stroh, David Watkins, and GreatBanc Trust Company (collectively, the "Defendants").

## PRELIMINARY STATEMENT

Plaintiffs bring this purported class action on behalf of all non-defendant noteholders of EYP against a number of former directors (some of whom are also noteholders), several former stockholders, and the ESOP Trustee. The TAC alleges a purported scheme to over-value EYP for purposes of the company's conversion to an Employee Stock Ownership Plan (ESOP). The TAC attempts to shoe-horn Watkins, himself a noteholder and a former director, into the litigation by making conclusory and vague allegations about his purported involvement in the supposed scheme. Plaintiffs' theory appears to be that Watkins zeroed out his own equity in EYP in exchange for himself receiving improperly valued notes in the hopes of receiving some unspecified future benefit from EYP. This theory is absurd and entirely unsupported. Watkins converted his existing equity in EYP into notes in the same proportion as all other shareholders who became noteholders. And, like all other noteholders, he has to date seen no payment on them and is now being told they have lost their value.

The TAC should be dismissed against Watkins for many of the same reasons discussed in the motions to dismiss submitted by Tom Birdsey ("Birdsey") and by the LPC Defendants,[1] and Watkins adopts and incorporates those reasons herein. As to Watkins specifically, the TAC asserts assorted fraud-based common law claims apparently based solely on his position as a director at the time of the ESOP transaction. But position alone is insufficient as a matter of law, and the TAC does not, and cannot, present any factual support for such claims. There are no facts stated that support the existence of any fraudulent scheme, and even if a fraudulent scheme were to be assumed (which it cannot be) there are no facts at all to support the notion that Watkins somehow participated. Indeed, the only individual allegation about Watkins is the assertion that he made a stray comment on a phone call that the proposed ESOP agreements were "onerous." (TAC ¶ 111.) This single allegation cannot plausibly support the scaffolded fraud, breach of fiduciary duty, and conspiracy claims lobbed against Watkins.

The TAC purports to assert fraud-based claims against Watkins for signing onto the ESOP and for his alleged silence regarding EYP's valuation before the ESOP closed. However, the TAC fails to allege any facts to show that EYP was over-valued at all, never mind facts to show that Watkins knew of any supposed over-valuation. Moreover, the TAC does not, and cannot, state that he gained advantage over other noteholders from his positions on the transaction, which he did not. The TAC's allegations provide no basis for personal liability against Watkins under any of the legal theories set forth therein.

The TAC's breach of fiduciary duty claim against Watkins further fails because it is based on the flawed theory that, as a minority stockholder himself, Watkins owed duties to other

---

[1] The LPC Defendants are Long Point Capital, Inc., Long Point Capital Fund II, L.P., Long Point Capital Partners II, L.P., Long Point Capital Fund III, L.P., Long Point Capital Partners III, L.P., Ira Starr, Norman Scherr, and Eric Von Stroh.

minority stockholders who participated in the ESOP transaction, as well as to other noteholders, *i.e.*, creditors. This is not a basis for liability. Nor can the TAC state a breach of any duty of loyalty by Watkins because it makes no allegations that Watkins engaged in any misconduct. To the contrary, Watkins, like the other noteholders, signed onto the ESOP and received notes commensurate with his prior level of equity. The relative value and collectability of those notes is the same for Watkins as for all other noteholders. The other common law claims—unjust enrichment, reformation, and civil conspiracy—fail for the same reasons.

Therefore, as explained more fully below and in the briefs of the other Defendants, the TAC should be dismissed with prejudice as to Watkins in its entirety under Rule 12(b)(6) for failing to satisfy the pleading requirements of Rule 8, Rule 9(b), and Rule 23.1.

## FACTUAL BACKGROUND

Watkins is a retired Houston-based architect specializing in commercial and healthcare buildings. Over his lengthy career, Watkins founded and built the successful architecture firm of WHR Architects, which was acquired by EYP in 2014. (Declaration of Wendy H. Schwartz, dated April 13, 2021 ("Schwartz Decl."), Ex. A, Verit Advisors LLC, EYP Architecture & Engineering Fairness Opinion Presentation dated June 20, 2016, at 12.)[2] Of the 600 EYP employees, approximately 175 joined from WHR. (*See id.*) Watkins joined the EYP Board of Directors in 2015 and continued to serve in that role until February 2021. (TAC ¶¶ 15, 23.) However, he retired from his employment at EYP in mid-2017 after forty years of practice. The TAC appears purposefully vague on this point (*see* TAC ¶¶ 42, 91), yet Plaintiffs have no excuse

---

[2] Watkins draws from the transaction documents relied on in the TAC and joins the arguments in the Motions to Dismiss submitted by Birdsey and the LPC Defendants explaining why those documents are appropriately considered on this motion. In addition, to avoid duplication of exhibits, Watkins cross-references, and incorporates by reference, exhibits referenced by other Defendants where he is able.

for failing to acknowledge Watkins' retirement date in 2017, as it was widely reported within the industry. *See* Emily Wilkinson, *After nearly 40 years, Houston health care architect to retire*, Houston Business Journal (July 12, 2017), https://www.bizjournals.com/houston/news/2017/ 06/12 /after-nearly-40-years-houston-health-care.html; The McMorrow Reports, *Charles Griffin named to lead EYP Health; David Watkins to retire*, https://www.mcmorrowreports.com/charles-griffin-appointed-to-lead-eyp-health-david-watkins-to-retire/.[3]

Other Defendants are better positioned to provide a detailed explanation of EYP's ESOP conversion and the holdings and contractual position of each of the Plaintiffs, and we incorporate herein by reference the descriptions in the motions submitted by Birdsey and the LPC Defendants. Here, Watkins highlights those few items that are specific to him.

In exchange for merging his profitable firm WHR into EYP in 2014, Watkins and other WHR former stockholders obtained equity in EYP. (Schwartz Decl., Ex. B, EYP Holdings Inc., ESOP Information Statement at Ex. G, page 8. ) Less than two years later, EYP began discussing restructuring as an ESOP. Under the ESOP, EYP stockholders converted their holdings into Group I notes or Group II notes and warrants. (Merger Agreement[4] §§ 2.4, 2.5; *see also* TAC ¶ 19.) The Group I and Group II notes were set to mature in 2051. (Merger Agreement Ex. A (Form of Group I Note) & Ex. B (Form of Group II Note).) Watkins was part of the small group of stockholders expected to retire by 2019, and as such, under the ESOP his EYP equity—received as part of the WHR merger only two years earlier—was fully converted into Group I notes. (Schwartz Decl., Ex. C, Stout Risius Ross, Inc.'s Opinion for GreatBanc

---

[3] As described in the LPC Defendants' Motion to Dismiss, the Court may take judicial notice of the fact of publication of a news article.

[4] The Merger Agreement is attached to the Declaration of Scott Watnik, dated April 13, 2021, submitted with Birdsey's Motion to Dismiss.

Trust Company, as Trustee of the EYP Employee Stock Ownership Plan, dated June 28, 2016, at 2 ("SRR Fairness Opinion"); *see also* TAC ¶ 138.)

Watkins, along with all of the other stockholders converting to noteholders, received consideration for his stock based on the fixed $5,181.39 per share valuation of EYP Holdings' stock. Watkins thus canceled 1,957.8894 shares of EYP Holdings for the right to receive a $10,144,596.39 Group I note. (Merger Agreement, Schedule I.) The TAC does not allege that Watkins received any additional consideration during the ESOP transaction for turning in his stock, nor could it. The Plaintiffs who were stockholders at the time of the ESOP (McDougall, Ottavio, Lassor, and Steinbock) received consideration based on the same valuation. (*Id.*) The LPC Defendants' motion describes each of the Plaintiffs' agreements and holdings related to EYP, and Watkins joins in and incorporates that description herein.

Unfortunately, after the ESOP conversion, EYP's major business sectors slumped. The revenue projections supporting the ESOP did not anticipate this decline in EYP's major sectors. Therefore, since the ESOP conversion, EYP has not paid interest on any of the notes, including the note held by Watkins. The TAC alleges that all noteholders, including Watkins, are now holding "subordinated and virtually worthless notes" (TAC ¶ 2; *see also* TAC ¶ 6) that are "uncollectible." (TAC ¶ 45.) Taking this as true for purposes of this motion, notwithstanding the substantial value that Watkins delivered to EYP via the WHR merger, Watkins is in the same position as all of the Plaintiff noteholders, having received no payment on account of his notes and having no assurance as to whether he will be able to ultimately recover their full value.

## ARGUMENT

The TAC asserts six claims against Watkins: breach of fiduciary duty (Count 2), fraud (Count 3), civil conspiracy (Count 4), unjust enrichment (Count 5), reformation (Count 8), and

constructive trust (Count 9). Except as otherwise stated herein, Watkins joins in and adopts the legal arguments advanced by Birdsey and by the LPC Defendants[5] regarding the general legal insufficiencies of the TAC. Below, Watkins addresses the legal insufficiencies specific to the allegations against himself.

First, none of the claims asserted against Watkins survive the basic requirement under even the notice pleading requirements of Rule 8 that a plaintiff state a plausible claim. "[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* Thus, a motion to dismiss should be granted where the factual allegations do not "plausibly suggest[]" entitlement to relief. *Id.* at 557. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The TAC does not survive this test.

Second, as each of the causes of action alleged against Watkins relies on the existence of a fraud, Plaintiffs also must, yet have failed to, satisfy the particularity requirements of Rule 9(b), which require them to "(1) specify the statements that [it] contends [are] fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993).

---

[5] The LPC Defendants' Motion to Dismiss asserts that Section 6.2.5 of the Merger Agreement bars claims against the LPC Defendants by Plaintiffs McDougall, Ottavio, Lassor, and Steinbock. Watkins does not rely on that bar to the extent that Plaintiffs McDougall, Ottavio, Lassor, and Steinbock purport to assert fraud claims against Watkins as a "Seller" within the meaning of Section 6.2.5.

Despite four attempts to state a claim as to Watkins, the TAC still fails to satisfy these essential requirements. The Court should therefore dismiss the claims, with prejudice and not permit Plaintiffs a fifth attempt to state a claim against Watkins. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (a court should exercise its discretion to dismiss with prejudice "where a plaintiff is unable to allege any fact sufficient to support its claim").

## I.   PLAINTIFFS FAIL TO STATE A FRAUD CLAIM AGAINST WATKINS (COUNT 3).

The TAC fails to plead any element of fraud against Watkins, let alone with particularity. To state a claim for fraud under both New York and Delaware law,[6] a plaintiff must allege: "1) a material false representation or omission of an existing fact; 2) made with knowledge of its falsity; 3) with an intent to defraud; 4) reasonable reliance; 5) and resulting damage to the plaintiff." *Hughes v. BCI Int'l Holdings, Inc.*, 452 F. Supp. 2d 290, 302 (S.D.N.Y. 2006) (stating New York law and acknowledging that Delaware law has the same standard for pleading fraud); *see also Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 207 (Del. Ch. 2006), *aff'd sub nom. Trenwick Am. Litig. Tr. v. Billett*, 931 A.2d 438 (Del. 2007) (citations omitted) (explaining elements of fraud claim under Delaware law).

Essentially, Plaintiffs' theory is that Long Point "corrupted" Watkins. (TAC ¶ 4.) Plaintiffs do not allege with any particularity how Watkins was supposedly "corrupted" and do

---

[6] In the event of a conflict between New York and Delaware law, New York choice of law rules would apply the law of the place where the allegedly tortious event occurred. *Marino v. Grupo Mundial Tenedora, S.A.*, 810 F. Supp. 2d 601, 606 (S.D.N.Y. 2011). However, all of the claims "arising in whole or in part out of, related to, based upon, or in connection" with the ESOP transaction are governed by Delaware law. (Merger Agreement at § 7.8.) Given that the application of New York or Delaware law leads to the same result here, the Court need not decide which law to apply. *Marino*, 810 F. Supp. at 606.

not provide any detail on his supposed role in the alleged scheme. Rather, the TAC apparently seeks to hold Watkins individually liable for alleged fraud merely by virtue of his Board position. The TAC generally does not allege any conduct engaged in individually by Watkins, and instead groups him into having the same general knowledge as other Defendants. This collective pleading approach does not satisfy Rule 8 or Rule 9(b). *See Ellison v. Am. Image Motor Co.*, 36 F. Supp. 2d 628, 640–41 (S.D.N.Y. 1999) ("When fraud is alleged against multiple defendants, a plaintiff must plead with particularity by setting forth separately the acts complained of by each defendant." (internal quotation and citation omitted)). As explained in detail for each element below, the TAC falls well short of the plausibility standard governing notice pleading, never mind the particularity standard, and cannot state a fraud claim as to Watkins.

### A. Plaintiffs fail to allege any false representations by Watkins.

The TAC fails to plead any representations by Watkins at all and certainly does not plead facts showing that Watkins knew that any statements related to the ESOP were false. Plaintiffs make only one allegation about conduct by Watkins alone: that on a call with some EYP stockholders, Watkins allegedly "encouraged" others to "downplay to other EYP employees and stockholders the supposed onerousness of agreements they would be asked to sign." (TAC ¶ 111.) This is the only allegation that even approaches a "statement" by Watkins in the entire TAC. Even assuming it to be true, the allegation is not relevant to Plaintiffs' theory of the allegedly fraudulent scheme—that EYP was over-valued for the ESOP. There is no theory on which this is a false representation, much less one on which anyone could rely to their detriment.

Other than this alleged phone call, the TAC does not allege any conduct by Watkins individually. While the TAC groups Watkins into numerous paragraphs, whenever the TAC

attempts to describe any tangible conduct, Watkins' name disappears. Group-pleaded allegations about Watkins' purportedly false representations are legally insufficient, and do not contribute to a viable claim against him. *See Ellison*, 36 F. Supp. 2d at 640–41.

For example, Plaintiffs allege that Watkins and other Defendants made false representations by "repeatedly promot[ing]" the ESOP and "represent[ing] the materially inflated valuation to be fair." (TAC ¶ 108.) This group-pleaded allegation does not allege any falsehood at all because the TAC lacks any factual allegations to support the notion that EYP was over-valued at the time of the valuation. Yet even if it did, this group-pleaded allegation fails to identify any specific statement by Watkins, as is required by Rule 9(b). *See Bauman v. Mount Sinai Hosp.*, 452 F. Supp. 2d 490, 503 (S.D.N.Y. 2006) (a plaintiff must plead the "the who, what, when, where and how of the alleged fraud") (citation omitted). Thus, this allegation cannot support a fraud claim.

Other allegations of the Defendants' purported false representations fail for the same reasons. For example, Plaintiffs allege that Watkins and Birdsey "pushed management" to join the ESOP and that they told others they were committed to joining the ESOP. (TAC ¶ 109.) Again, there is no false representation in Watkins' telling others that he was committed to the ESOP. Moreover, even if one tried to infer something false, this allegation attributes conduct to both Birdsey and Watkins without distinguishing between them or presenting specific statements.

Plaintiffs allege several times that Watkins and other Defendants "touted" that the process and the valuation were "fair." (TAC ¶¶ 109, 110, 139.) This again does not provide any evidence of falsity, given that there are no specific allegations to show that the valuation was not

fair.  And again, Plaintiffs do not support this allegation with any specific statements and there is still no allegation of any statement that Watkins himself made.

Even if there was a falsehood, and there is not, there is no allegation that Watkins knew of it, or that he was recklessly indifferent to any such falsehood.  *See Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 181 (2d Cir. 2007) (plaintiff must allege the defendant knowingly or recklessly misrepresented a material fact).  The TAC does not plead any facts to support the inference that Watkins knew that the valuation of EYP was allegedly inflated.  (TAC ¶ 108.)  Nor does the TAC plead any communications that show an inflated valuation, never mind communications to Watkins that would have given him notice of such.  According to Plaintiffs' theory, the allegedly inflated value of EYP was based on promises of work with SUNY Polytechnic that EYP would thereafter lose because of a criminal investigation into SUNY Polytechnic.  (TAC ¶¶ 79–83.)  As Birdsey and the LPC Defendants explain, not only was this not material, it was also already public, and there is no duty to disclose publicly available information.  Further, the only allegations seeking to show that Watkins had knowledge of any purported issues with keeping the SUNY Polytechnic work are once again made in group-pleaded statements as to all Defendants.  (TAC ¶¶ 74, 84, 85.)  This is insufficient to plead specific knowledge of Watkins.

The TAC makes some allegations about a meeting where the SUNY Polytechnic work was discussed.  (TAC ¶¶ 12, 83.)  But, crucially, the TAC does not allege Watkins was in the room at that time; rather, it specifically states he "later joined" the meeting.  (TAC ¶ 83.)  Other allegations about this same meeting broadly sweep Watkins into the meeting without specifying when he was there, and again group-plead his knowledge and conduct.  (TAC ¶¶ 12, 158.)  These allegations are again insufficient to establish knowledge, particularly in view of the specific

acknowledgement that he joined the meeting at a later time. In sum, there are no legally cognizable allegations to support the inference that Watkins had any knowledge about the alleged issues with the SUNY Polytechnic account.

Because the TAC fails to adequately allege any undisclosed problems with the SUNY Polytechnic account and further fails to allege that Watkins had any knowledge about those purported issues, the TAC does not support the conclusory allegations that Watkins knew that alleged representations about "fairness" were false. Without allegations of knowledge about any issues at all with SUNY Polytechnic, there are no allegations that could support an inference that Watkins somehow knew EYP was allegedly over-valued during the ESOP process. And without that inference, the TAC cannot claim that Watkins' alleged statements about the fairness of the value and process were false representations. Additionally, Plaintiffs cannot satisfy the element of reasonable reliance on those non-existent statements. Therefore, the claims against Watkins based on alleged false representations must be dismissed.

### B. Plaintiffs fail to identify any specific omissions by Watkins.

The TAC also attempts to plead that Watkins fraudulently omitted the supposed over-valuation issues based on the SUNY Polytechnic investigation, and that he also fraudulently omitted disclosing the possibility of a merger with another architecture firm, Stantec.[7] These allegations also fail. To state a fraud claim based on omission, Plaintiffs must allege a duty to disclose, which the Birdsey Motion to Dismiss demonstrates did not exist here. And more specifically as to Watkins, Plaintiffs must present allegations sufficient to show that "the defendants knew or believed that the representation was false or made the representation with a

---

[7] As detailed in the motions to dismiss submitted by Birdsey and by the LPC Defendants, the alleged omissions lack the necessary materiality to state a fraud claim. Watkins joins in and incorporates that argument.

reckless indifference to the truth." *Trenwick Am. Litig. Tr.*, 906 A.2d at 207 (internal citations omitted); *see also Merrill Lynch & Co. Inc.*, 500 F.3d at 181. The TAC again contains only group-pleaded allegations on this point and fails to state any facts to suggest that Watkins even knew about any of the allegedly omitted issues, never mind that he failed to disclose them.

With respect to SUNY Polytechnic and the alleged under-valuation, the TAC seeks to fault Watkins for alleged silence. (TAC ¶¶ 79–83, 121, 122, 133.) But as described above, the vague allegations provide no information connecting Watkins to any ongoing knowledge or responsibility regarding the valuation, let alone any knowledge or responsibility regarding anything allegedly wrongful about that ESOP transaction. As described above, Plaintiffs plead no facts to support an inference that there were any undisclosed issues with SUNY Polytechnic, never mind whether Watkins knew of any such issues.

With respect to the supposed Stantec alternative proposal, Plaintiffs allege only that the Defendants, as a group, made a material omission by not disclosing a possible buy-out deal by the architecture firm Stantec as an alternative to the ESOP. (TAC ¶¶ 51–62.) These allegations do not involve Watkins at all. They describe supposed early work by an outside consultant on a possible deal, with no reference to Watkins. Without pleading that Watkins had any knowledge at all of any Stantec proposal, if it even existed, Plaintiffs cannot allege that he made a material omission.

The TAC makes a series of additional group-pleaded allegations about other omissions by Defendants that include Watkins. (TAC ¶¶ 118–126, 141.) These relate to conduct after the close of the ESOP transaction. Therefore, even if there were specific omissions alleged by Watkins, which there are not, Plaintiffs cannot possibly have relied on those alleged failures to disclose while entering the ESOP. Watkins joins in and incorporates the arguments of Birdsey

and the LPC Defendants regarding the timing of the various supposed omissions as they relate to each Plaintiff and the failure of such omissions to state a claim on the basis of timing alone.

As the TAC has not pleaded that Watkins made any material omissions, nor any legally cognizable reliance on those non-existent omissions, the claims against Watkins that rely on omissions should be dismissed.

### C. Plaintiffs fail to plead intent, damages, or loss causation.

In addition to failing to plead any actionable statement or omission, the TAC fails to allege any benefit at all to Watkins from the supposed fraud, never mind any improper benefit. *See Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*, 85 F. Supp. 2d 282, 295 (S.D.N.Y. 2000). "A complaint may give rise to a sufficient inference of fraudulent intent in two ways, either: (1) by identifying circumstances indicating conscious behavior by the defendant through 'correspondingly' strong allegations; or (2) by alleging a motive for committing fraud and a clear opportunity for doing so." *Id.* (citing *Powers v. British Vita, P.L.C.*, 57 F.3d 176, 184 (2d Cir. 1995)). *See also Metro Commc'n Corp. BVI v. Advanced Mobilecomm. Techs. Inc.*, 854 A.2d 121, 143 (Del. Ch. 2004). An inference of intent "must entail allegations of 'concrete benefits that could be realized by one or more of the . . . nondisclosures alleged.'" *Odyssey Re (London) Ltd.*, 85 F. Supp. 2d at 295 (quoting *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 268 (2d Cir. 1996) (alteration in original)). Notably, "[t]he motive to maintain the appearance of corporate profitability, or the success of an investments [sic], will naturally involve benefit to a corporation, but does not 'entail concrete benefits'." (*Id.* (quoting *Chill*, 101 F.3d at 268)).

Watkins is not alleged to have received any cash or other compensation at the time of the ESOP conversion. He received exactly what every other shareholder received—a conversion of his equity into an appropriate class of notes, in proportion to his equity holdings. The TAC

implies that Watkins should not have received Group I notes because he "intended to continue working for EYP" and that he "provided services for EYP through the commencement and pursuit of this action." (TAC ¶ 91.) In fact, EYP properly converted Watkins' equity into Group I notes, as he retired in 2017, and thus falls in the category of those placed in Group I, namely, employees expected to retire prior to 2019. (W. Schwartz Decl., Ex. C, SRR Fairness Opinion, at 2; TAC ¶ 138.) Watkins served on the Board until 2021 but this is not a relevant consideration in the Group I and Group II pools. (*Id.*) And, like every other noteholder, to date Watkins has received no payments whatsoever on notes that Plaintiffs allege are now worthless.

The TAC makes vague allegations that Watkins' motive for the alleged scheme was to "ingratiate himself further with Birdsey for other compensation purposes and roles going forward at EYP." (TAC ¶ 156.) The TAC does not back this up with any specific facts, nor could it, as the allegation is implausible on its face. And without facts to support the allegation of additional compensation, there is nothing to support the notion Watkins received any extra benefit under the ESOP.

The TAC also appears to allege that all of the Defendants' purpose in the allegedly fraudulent scheme was to ensure Long Point would receive a 500% return on investment and leave the minority stockholders with worthless notes. (TAC ¶ 12.) Again, this group-pleaded paragraph asserts an absurd motive for Watkins: transforming his equity into possibly worthless notes shortly before retirement to benefit an entity with which he had no relationship. There is no benefit to Watkins from this alleged scheme and no allegations that support the inference that he would choose to benefit Long Point at his own expense.

Finally, as detailed in the motions to dismiss submitted by Birdsey and by the LPC Defendants, incorporated herein by reference, Plaintiffs fail to plead specific damages or loss

causation flowing from the supposed statements and omissions.  Moreover, to the extent the ESOP transaction did result in the exchange of stock for potentially worthless notes, Watkins stands in the same position as the Plaintiffs—he too is an unpaid noteholder who received no other compensation under the ESOP.

Plaintiffs' failure to plead intent, damages, or loss causation are each a basis to dismiss the fraud claim as against Watkins in its entirety.

## II. PLAINTIFFS FAIL TO SATISFY THE ELEMENTS OF A BREACH OF FIDUCIARY DUTY CLAIM (COUNT 2).

The TAC also fails to satisfy the elements of a breach of fiduciary duty claim against Watkins (Count 2).[8]  Under Delaware law[9], a plaintiff must plead the existence of a fiduciary duty and a breach of that duty.  *Marino v. Grupo Mundial Tenedora, S.A.*, 810 F. Supp. 2d 601, 607 (S.D.N.Y. 2011) (citing *York Linings v. Roach*, No. 16622–NC, 1999 WL 608850, at *2 (Del. Ch. July 28, 1999)).

The TAC appears to assert that Watkins owed duties to other minority stockholders at the time of the ESOP conversion under *Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.*, 506 A.2d 173 (Del. 1986).  (TAC ¶ 98.)  However, in Delaware, only a "controlling stockholder"—a stockholder who "owns a majority interest in or exercises control over the business affairs of the corporation"—owes fiduciary duties to other stockholders.  *CVC Claims Litig. LLC v. Citicorp*

---

[8] The motions to dismiss submitted by Birdsey and by the LPC Defendants demonstrate that the breach of fiduciary duty claim is time-barred under Delaware law, that the statute of limitations cannot be equitably tolled, and that no duty is owed to the extent the alleged improper actions affected noteholders, as they are alleged creditors.  Watkins joins in and incorporates those arguments.

[9] EYP is a Delaware corporation and Delaware law thus governs the breach of fiduciary duty claim.  *KDW Restructuring & Liquidation Servs. LLC v. Greenfield*, 874 F. Supp. 2d 213, 221 (S.D.N.Y. 2012).

*Venture Capital Ltd.*, No. 03-cv-7936, 2006 WL 1379596, at *6 (S.D.N.Y. May 18, 2006) (citing *Kahn v. Lynch Commc'n Sys., Inc.*, 638 A.2d 1110, 1113–14 (Del. 1994)). Watkins was not a controlling stockholder; rather, he was a minority stockholder just like the Plaintiffs. There are no allegations to the contrary. Therefore, he owed no *Revlon* duties to any other stockholders, and any breach of fiduciary duty claim based on that theory must fail.

The TAC also alleges that Watkins, in his capacity as a member of EYP's Board of Directors, owed a duty of loyalty to stockholders and the corporation. Assuming that Watkins owed a duty of loyalty to any of the Plaintiffs, which cannot be assumed for many of them,[10] the TAC fails to plead with particularity that Watkins breached that duty. *See Marino*, 810 F. Supp. 2d at 606 (Rule 9(b) applicable to breach of fiduciary duty claims that sound in fraud). To state a claim for breach of the duty of loyalty, a plaintiff must allege that there is a "[misuse of] power over corporate property or processes in order to benefit [a director] rather than advance corporate purposes." *KDW Restructuring & Liquidation Servs. LLC*, 874 F. Supp. 2d at 222 (citing *Dweck v. Nasser*, No. 1353–VCL, 2012 WL 161590, at *12 (Del. Ch. Jan. 18, 2012)). As with the fraud claims, Plaintiffs fail to allege any misconduct by Watkins specifically and instead group plead nearly every allegation. Plaintiffs do not set forth any facts to support an inference that Watkins misused any corporate property or process to benefit himself. In fact, as detailed above (at 4–5 & 14), Watkins derived no separate benefit from the ESOP transaction, and as a noteholder is in the same position as the Plaintiffs.

Plaintiffs also appear to allege a breach of the duty of disclosure, which is a subset of the duty of loyalty. The duty of disclosure "represents nothing more than the well-recognized

---

[10] As shown in the LPC Defendants' Motion to Dismiss, the TAC fails to adequately allege that Plaintiffs Eijadi, Kohlberg, Jurkowski, and Sears were stockholders for whom any duty of loyalty arose at the time of the transaction. Watkins joins in and incorporates that argument.

proposition that directors of Delaware corporations are under a fiduciary duty to disclose fully and fairly all material information within the board's control when it seeks shareholder action." *Stroud v. Grace*, 606 A.2d 75, 84 (Del. 1992). When a corporate board of directors seeks stockholder action, this duty arises. *Id.* Here, however, Plaintiffs have not pleaded with particularity any facts to support the assertion that Watkins breached the duty of disclosure. Again, Plaintiffs' conclusory, group-pleaded allegations that Watkins knew of a supposedly inflated value of EYP before the conversion or of a purported potential Stantec transaction are entirely conclusory and cannot satisfy the obligation to plead specific facts to support the claim.

## III. PLAINTIFFS FAIL TO SUFFICIENTLY STATE THEIR OTHER COMMON LAW CLAIMS AGAINST WATKINS (COUNTS 4, 5, 8 AND 9).

### A. Plaintiffs fail to allege a civil conspiracy between Watkins and the other Defendants.

The TAC fails to state a claim for civil conspiracy (Count 4). Civil conspiracy is not an independent cause of action; rather, it is a concept that may link a defendant to the torts of other defendants under certain circumstances. *Marino*, 810 F. Supp. 2d at 610; *see also 77 Charters, Inc. v. Gould*, 2020 WL 2520272, at *23 (Del. Ch. May 18, 2020) ("Civil conspiracy is 'not an independent cause of action' and, as such, the gravamen 'of an action in civil conspiracy is not the conspiracy itself but the underlying wrong which would be actionable absent the conspiracy.'" (citing *Kuroda v. SPJS Hldgs., L.L.C.*, 971 A.2d 872, 892 (Del. Ch. 2009))). Because Plaintiffs have not sufficiently pleaded an underlying tort, their civil conspiracy claim must also fail.

Even were there an underlying tort, Plaintiffs fail to satisfy the elements of a civil conspiracy claim. To support such a claim, a plaintiff must plead: "(1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional

participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." *Marino*, 810 F. Supp. 2d at 610; *77 Charters, Inc.*, 2020 WL 2520272, at *22. The TAC fails to plead an agreement involving Watkins in even a conclusory fashion, let alone set forth specific facts that would support such an allegation. Furthermore, despite the TAC's formulaic recitation that Defendants "acted in furtherance of the conspiracy," Plaintiffs fundamentally fail to allege any conduct by Watkins. As detailed above, the only allegation about Watkins' own conduct relates to a phone call where he allegedly "downplay[ed]" the burdens in the proposed agreements (TAC ¶¶ 111, 116); that is not an act in furtherance of any purported fraudulent scheme. Therefore, the civil conspiracy claim fails.

### B. Plaintiffs fail to allege an unjust enrichment claim.

Plaintiffs cannot state a claim for unjust enrichment (Count 5) against Watkins because, like the other stockholders converted to noteholders, he has received no payment at all under the ESOP conversion.[11] Under New York law, to plead unjust enrichment, a plaintiff must allege "that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Mount v. PulsePoint, Inc.*, 684 F. App'x 32, 36 (2d Cir. 2017) (internal quotation and citation omitted); *see also In re Pfizer Inc. S'holder Derivative Litig.*, 722 F. Supp. 2d 453, 465 (S.D.N.Y. 2010) (unjust enrichment under Delaware law requires pleading "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification and (5) the absence of a remedy provided by law" (quoting *Cantor Fitzgerald, L.P. v. Cantor*, 724 A.2d 571, 585 (Del. Ch. 1998))). Watkins has not been enriched by the ESOP.

---

[11] As detailed in the motions to dismiss submitted by Birdsey and by the LPC Defendants, the unjust enrichment claim also fails because Plaintiffs' claims arise under a contract. Watkins joins in an incorporates that argument.

As with the other noteholders, Watkins has not received any payment from EYP.  His note value reflects his pre-ESOP stock holdings in EYP; he received nothing in addition during the ESOP conversion.  The TAC essentially concedes this, as it does not plead Watkins has received any payments or other compensation under the ESOP.  Indeed, the most the TAC pleads is that Watkins received Group I notes and "ingratiate[ed]" himself with Birdsey for future compensation and roles at EYP.  (TAC ¶ 156.)  The TAC does not back up this spurious allegation with any facts or allege that Watkins received anything extra under the ESOP. Plaintiffs' other conclusory allegation of enrichment is group-pleaded as to all defendants (TAC ¶ 210) and should not be credited.  *See, e.g.*, *Gillespie v. St. Regis Residence Club*, 343 F. Supp. 3d 332, 352–53 (S.D.N.Y. 2018) (dismissing group-pleaded unjust enrichment claim for "fail[ure] to plead that the Non-Sponsor Defendants specifically profited at Plaintiffs' expense"). Because the TAC has not, and cannot, show any enrichment to Watkins, it cannot satisfy any element of the claim.

### C.  Plaintiffs fail to allege a reformation claim.

The TAC fails to plead the elements necessary for reformation (Count 8).  Under New York law, reformation "is warranted only in cases of mutual mistake, where the written agreement contradicts the intent of both parties, or in cases of fraud, where 'the parties have reached agreement and, unknown to one party but known to the other (who has misled the first), the subsequent writing does not properly express that agreement."  *O'Brien v. Argo Partners, Inc.*, 736 F. Supp. 2d 528, 536 (E.D.N.Y. 2010), *aff'd*, 426 F. App'x 36 (2d Cir. 2011) (quoting *Chimart Assocs. v. Paul*, 66 N.Y.2d 570 (N.Y. 1986)); *see also Chase Manhattan Bank v. Iridium Africa Corp.*, 307 F. Supp. 2d 608, 614–15 (D. Del. 2004) (reformation "is appropriate 'only when the contract does not represent the parties' intent because of fraud, mutual mistake

or, in exceptional cases, a unilateral mistake coupled with the other parties' knowing silence.'"
(quoting *Emmert v. Prade*, 711 A.2d 1217, 1219 (Del. Ch. 1997) (citation omitted))). The point
of reformation is to "reform a document to make it conform to the intent of the parties." *Chase
Manhattan Bank*, 307 F. Supp. 2d at 614–15 (citing *Waggoner v. Laster*, 581 A.2d 1127, 1136
(Del. 1990)); *see also O'Brien*, 736 F. Supp. 2d at 536 ("Reformation is not granted for the
purpose of alleviating a hard or oppressive bargain, but rather to restate the intended terms of an
agreement when the writing that memorializes that agreement is at variance with the intent of
both parties." (quoting *George Backer Management Corp. v. Acme Quilting Co., Inc.*, 46 N.Y.2d
211, 219 (N.Y. 1978))).

Not only does the TAC fail to plead an underlying fraud permitting reformation (*see
above at 7–15*), but more importantly, the TAC does not plead that the reformation sought was
the original intent of the parties. The TAC seeks reformation to subordinate the interests of Long
Point, Starr, Birdsey, and Watkins to those of other noteholders (TAC ¶ 230) but does not plead
that was any noteholders' intent in drafting the notes. Therefore, this claim must be dismissed.

### D. Plaintiffs cannot plead constructive trust as a claim.

Finally, the TAC attempts to plead a constructive trust claim against Watkins (Count 9).
This count must fail because constructive trust is a remedy, not a cause of action. *Anwar v.
Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 419 (S.D.N.Y. 2010) (citing *Gary Friedrich Ent.,
LLC v. Marvel Ent., Inc.*, 713 F. Supp. 2d 215, 222 (S.D.N.Y. 2010); *Bertoni v. Catucci*, 498
N.Y.S.2d 902, 905 (N.Y. App. Div. 1986)); *see also Teachers' Ret. Sys. of La. v. Aidinoff*, 900
A.2d 654, 670 (Del. Ch. 2006). In addition, under New York law, this count must likewise fail
because the TAC fails to plead an unjust enrichment. *See Diplomat Direct Mktg. Corp. v.
Stylesite Mktg., Inc. (In re Stylesite Mktg., Inc.)*, 253 B.R. 503, 508 (Bankr. S.D.N.Y. 2000)

(dismissing claim for constructive trust and noting that New York law generally requires "(1) a confidential or fiduciary relationship, (2) a promise, (3) a transfer in reliance on the promise, and (4) unjust enrichment" (citing *Koreag Controle et Revision, S.A. v. Refco F/X Assocs., Inc. (In re Koreag, Controle et Revision S.A.)*, 961 F.2d 341, 342 (2d Cir. 1992), *cert. denied*, 506 U.S. 865; *Sharp v. Kosmalski*, 386 N.Y.S.2d 72 (N.Y. 1976))).

## **CONCLUSION**

For the foregoing reasons, David Watkins respectfully requests that the Court dismiss the TAC as against him, with prejudice, and grant such other and further relief as the Court deems just and proper.

Dated: April 13, 2021          By: *Wendy H. Schwartz*
       New York, New York       Wendy H. Schwartz
                                Sarah Dowd
                                **BINDER & SCHWARTZ LLP**
                                366 Madison Avenue, Sixth Floor
                                New York, New York 10006
                                Telephone: (212) 510-7008
                                Facsimile: (212) 510-7299
                                Email: wschwartz@binderschwartz.com
                                Email: sdowd@binderschwartz.com

                                *Attorneys for Defendant David Watkins*