**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MARJORIE KOHLBERG, et al.,

       *Plaintiffs*,

       -v.-

TOM BIRDSEY, et al.,

       *Defendants*,

   and,

EYP HOLDINGS, INC., and EYP GROUP
HOLDINGS, Inc.,

       *Nominal Defendants*.

Case No. 20-cv-06250 (ALC)

**MEMORANDUM OF LAW IN SUPPORT OF THE LPC DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT**

COVINGTON & BURLING LLP

Jonathan M. Sperling
Christopher Y. L. Yeung
The New York Times Building
620 Eighth Avenue
New York, New York 10018-1405
(212) 841-1000
jsperling@cov.com
cyeung@cov.com

*Attorneys for Defendants Long Point Capital,*
*Inc., Long Point Capital Fund II, L.P., Long*
*Point Capital Partners II, L.P., Long Point*
*Capital Fund III, L.P., Long Point Capital*
*Partners III, L.P., Ira Starr, Norman Scherr,*
*and Eric Von Stroh*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................. 1

FACTUAL BACKGROUND ................................................................... 3

I.     LPC Funds Provide Financial Investments in EYP Holdings in 2011. .................. 4

II.    EYP's Employee Stockholders Buy Out LPC and Convert EYP into a Tax-Advantaged Employee Stock Ownership Plan in 2016................................... 4

III.   Certain EYP Holdings Shareholders Opt Out of the 2016 ESOP Transactions by Selling Their Shares Prior to Closing. ......................................... 8

IV.   Apparently Unhappy with EYP's Financial Performance Since the ESOP Conversion, Plaintiffs File Suit Four Years Later. ................................. 11

ARGUMENT ...................................................................................... 13

I.     Contractual Terms Bar All the Claims of the Merger Participant Plaintiffs (McDougall, Ottavio, Lassor, and Steinbock) and Plaintiffs Kohlberg and Eijadi. .............................................................................................. 14

       A.    *The Merger Agreement's Exclusive Remedies Provision Bars All Claims by the Merger Participant Plaintiffs*.............................................. 14

       B.    *Plaintiffs Eijadi's and Kohlberg's Fraud, Breach of Fiduciary Duty, Conspiracy, and Unjust Enrichment Claims Are Barred By Their Stock Purchase Agreements.* .......................................... 16

II.    Contractual Limitations Aside, Plaintiffs Fail to State a Claim for Securities or Common Law Fraud. ...................................................... 17

       A.    *Plaintiffs Fail to Plead Any Misstatements by Any LPC Defendant.*........ 19

       B.    *Plaintiffs Fail to Plead Any Actionable Omissions by Any LPC Defendant.* ................................................................. 22

       C.    *Plaintiffs Fail to Plead Scienter.*............................................. 26

       D.    *Plaintiffs Fail to Plead Damages or Loss Causation.* ........................ 27

III.   Contractual Limitations Aside, Plaintiffs Fail to Plead a Claim For Breach of Fiduciary Duty.................................................................... 28

       A.    *All Fiduciary Duty Claims Are Time-Barred By the Statute of Limitations.* .............................................................. 29

B.      Even If the Claims Were Not Time-Barred, Plaintiffs Fail To State
a Claim For Breach of Fiduciary Duty.................................................... 31

C.      The LPC Defendants Did Not Owe the Non-Merger Participant
Plaintiffs Any Fiduciary Duties at the Time of the 2016 ESOP
Transactions. ........................................................................................... 33

D.      Plaintiffs Plead No Breach of Fiduciary Duties. .................................... 33

IV.     Contractual Limitations Aside, Plaintiffs Fail to Plead a Claim for Actual
or Constructive Transfer. ..................................................................................... 35

A.      Plaintiffs Lack Standing to Sue. .............................................................. 35

B.      Plaintiffs Fail to Plead Actual or Constructive Fraudulent Transfer
with Sufficient Specificity. ...................................................................... 36

V.      Contractual Limitations Aside, the Remaining Counts Fail as a Matter of
Law. ..................................................................................................................... 38

CONCLUSION ................................................................................................................ 40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*77 Charters, Inc. v. Gould*,
   2020 WL 2520272 (Del. Ch. May 18, 2020)............................................................17, 38, 39

*In re Affiliated Comput. Servs., Inc. S'holders Litig.*,
   2009 WL 296078 (Del. Ch. Feb. 6, 2009) ...............................................................................33

*In re Am. Int'l Grp. Inc. Derivative Litig.*,
   700 F. Supp. 2d 419 (S.D.N.Y. 2010).....................................................................................21

*In re AstraZeneca Sec. Litig.*,
   559 F. Supp. 2d 453 (S.D.N.Y. 2008).....................................................................................26

*Atlanta Shipping Corp., Inc. v. Chemical Bank*,
   818 F.2d 240 (2d Cir. 1987)....................................................................................................36

*ATSI Commc'ns v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007)...........................................................................................19, 26, 28

*Bay Harbour Mgmt. LLC v. Carother*s,
   282 Fed. App'x 71 (2d Cir. 2008)...........................................................................................26

*Brass v. Am. Film Techs., Inc.*,
   987 F.2d 142 (2d Cir. 1993)....................................................................................................23

*Cinerama, Inc. v. Technicolor, Inc.*,
   663 A.2d 1156 (Del. 1995) ......................................................................................................34

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
   752 F.3d 173 (2d Cir. 2014)....................................................................................................25

*Corp. Prop. Assocs. 14 Inc. v. CHR Holding Corp.*,
   2008 WL 963048 (Del. Ch. Apr. 10, 2008).............................................................................23

*In re Cross Media Mktg. Corp. Sec. Litig.*,
   314 F. Supp. 2d 256 (S.D.N.Y. 2004).....................................................................................30

*In re Dean Witter P'ship Litig.*,
   1998 WL 442456 (Del. Ch. July 17, 1998), *aff'd*, 725 A.2d 441 (Del. 1999)........................29

*Desimone v. Barrows*,
   924 A.2d 908 (Del. Ch. 2007)..................................................................................................32

*Dinsmore v. Squadron, Ellenoff, Plesent, Sheinfeld & Sorkin,*
    135 F.3d 837 (2d Cir. 1998)................................................................39

*Dodge v. Wilmington Tr. Co.,*
    1995 WL 106380 (Del. Ch. Feb. 3, 1995) ............................................39

*Dura Pharm., Inc. v. Broudo,*
    544 U.S. 336 (2005)..............................................................18, 27

*Eberhard v. Marcu,*
    530 F.3d 122 (2d Cir. 2008)...............................................................35

*Edgewater Growth Capital Partners, L.P. v. H.I.G. Capital, Inc.,*
    2010 WL 720150 (Del. Ch. Mar. 3, 2010)..........................................35

*Express Scripts, Inc. v. Bracket Holdings Corp.,*
    __ A.3d __, 2021 WL 752744 (Del. 2021) ..............................14, 15, 16

*Farr v. Shearson Lehman Hutton, Inc.,*
    755 F. Supp. 1219 (S.D.N.Y. 1991)...............................................30, 31

*Filler v. Hanvit,*
    2003 WL 22110773 (S.D.N.Y. Sept. 12, 2003)...................................39

*Goldstein v. CIBC World Mkts. Corp.,*
    776 N.Y.S.2d 12 (1st Dep't 2004) .......................................................17

*Harsco Corp. v. Segui,*
    91 F.3d 337 (2d Cir. 1996)..................................................................16

*In re Hechinger Inv. Co. of Del.,*
    327 B.R. 537 (D. Del. 2005)................................................................37

*HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.,*
    2021 WL 918556 (S.D.N.Y. Mar. 10, 2021) ..................................17, 20

*Katz v. Image Innovations Holdings, Inc.,*
    2008 WL 4840880 (S.D.N.Y. Nov. 5, 2008).......................................16

*Ki-Poong Lee v. So,*
    2016 WL 6806247 (Del. Super. Ct. Nov. 17, 2016).....................36, 37, 38

*Levine v. NL Indus., Inc.,*
    720 F. Supp. 305 (S.D.N.Y. 1989).......................................................22

*Litman v. Prudential-Bache Props., Inc.,*
    1994 WL 30529 (Del. Ch. Jan. 14, 1994)...........................................31

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
  797 F.3d 160 (2d Cir. 2015)................................................................................................18

*Malone v. Brincat*,
  722 A.2d 5 (Del. 1998) .....................................................................................................24

*Marino v. Grupo Mundial Tenedora, S.A.*,
  810 F. Supp. 2d 601 (S.D.N.Y. 2011)...............................................................................39

*In re Marketxt Holdings Corp.*,
  361 B.R. 369 (Bankr. S.D.N.Y. 2007)...............................................................................37

*In re Martha Stewart Living Omnimedia, Inc. Stockholder Litig.*,
  2017 WL 3568089 (Del. Ch. Aug. 18, 2017) ...................................................................34

*Matrixx Initiatives, Inc.* v. *Siracusano*,
  563 U.S. 27 (2011)...............................................................................................................18

*Meda AB v. 3M Co.*,
  969 F. Supp. 2d 360 (S.D.N.Y. 2013)................................................................................23

*Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*,
  164 F. Supp. 3d 568, 581 (S.D.N.Y. 2016)........................................................................22

*In re Merrill Lynch & Co., Inc.*,
  273 F. Supp. 2d 351 (S.D.N.Y. 2003)..................................................................................3

*In re Merrill Lynch & Co., Inc. Rsch. Reports Sec. Litig.*,
  2008 WL 2594819 (S.D.N.Y. June 26, 2008) ...................................................................34

*In re Merrill Lynch Tyco Rsch. Sec. Litig.*,
  2004 WL 305809 (S.D.N.Y. Feb. 18, 2004)........................................................................13

*In re Midway Games Inc.*,
  428 B.R. 303 (Bankr. D. Del. 2010) ..................................................................................23

*Mills v. Polar Molecular Corp.*,
  12 F.3d 1170 (2d Cir. 1993)...........................................................................................20, 30

*In re Morgan Stanley Derivative Litig.*,
  542 F. Supp. 2d 317 (S.D.N.Y. 2008)................................................................................32

*N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*,
  930 A.2d 92 (Del. 2007) ....................................................................................................23

*In re NewStarcom Holdings Inc.*,
  816 Fed. App'x 675 (3d Cir. 2020)................................................................................35, 36

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000)...........................................................................18

*Omnicare, Inc. v. NCS Healthcare, Inc.*,
    809 A.2d 1163 (Del. Ch. 2002).....................................................................33

*In re Oxford Health Plans, Inc. Sec. Litig.*,
    51 F. Supp. 2d 290 (S.D.N.Y. 1999)...........................................................26

*In re Philip Morris Int'l Inc. Sec. Litig.*,
    437 F. Supp. 3d 329 (S.D.N.Y. 2020)..........................................19, 21, 26

*Poindexter v. EMI Record Grp. Inc.*,
    2012 WL 1027639 (S.D.N.Y. Mar. 27, 2012) ...........................................3, 4

*Project Cricket Acquisition, Inc. v. FCP Inv'rs VI, L.P.*,
    159 A.D.3d 600, 74 N.Y.S.3d 517 (1st Dep't 2018) ...................................17

*Quadrant Structured Prods. Co., Ltd. v. Vertin*,
    102 A.3d 155 (Del. Ch. 2014)........................................................................31

*Quadrant Structured Prods. Co., Ltd. v. Vertin*,
    115 A.3d 535 (Del. Ch. 2015)...................................................................31, 33

*Ryan v. Gifford*,
    918 A.2d 341 (Del. Ch. 2007)........................................................................31

*S&R Assocs., L.P. v. Shell Oil Co.*,
    725 A.2d 431 (Del. Super. 1998)...................................................................29

*In re Sanofi Sec. Litig.*,
    155 F. Supp. 3d 386, 403 (S.D.N.Y. 2016).................................................25

*Schwartz v. Novo Industri, A/S*,
    658 F. Supp. 795 (S.D.N.Y. 1987)...............................................................22

*Seibert v. Sperry Rand Corp.*,
    586 F.2d 949 (2d Cir. 1978).........................................................................24

*Serova v. Teplen*,
    2006 WL 349624 (S.D.N.Y. Feb. 16, 2006).............................................25

*Teamsters Union 25 Health Servs. & Ins. Plan v. Baiera*,
    119 A.3d 44 (Del. Ch. 2015).........................................................................32

*Terra Sec. ASA Konkursbo v. Citigroup, Inc.*,
    820 F. Supp. 2d 541 (S.D.N.Y. 2011).........................................................18

*Thesling v. Bioenvision, Inc.*,
    374 Fed. App'x 141 (2d Cir. 2010)..................................................................24

*Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*,
    906 A.2d 168 (Del. Ch. 2006)......................................................................18

*In re Tribune Co. Fraudulent Conveyance Litig.*,
    2017 WL 82391 (S.D.N.Y. Jan. 6, 2017) ...................................................37

*In re Trinsum Grp., Inc.*,
    460 B.R. 379 (Bankr. S.D.N.Y. 2011)......................................................32, 38

*In re Tyson Foods, Inc.*,
    919 A.2d 563 (Del. Ch. 2007)......................................................................29

*Vichi v. Koninklijke Philips Elecs. N.V.*,
    62 A.3d 26 (Del. Ch. 2012)..........................................................................38

*In re Vivendi, S.A. Sec. Litig.*,
    838 F.3d 223 (2d Cir. 2016).........................................................................22

*Waite v. Schoenbach*,
    2010 WL 4456955 (S.D.N.Y. Oct. 29, 2010) ...........................................36

*In re Wayport, Inc. Litig.*,
    76 A.3d 296 (Del. Ch. 2013)........................................................................24

*In re White Metal Rolling & Stamping Corp.*,
    222 B.R. 417 (Bankr. S.D.N.Y. 2011).........................................................36

*Willensky v. Lederman*,
    2015 WL 327843 (S.D.N.Y. Jan. 23, 2015) ..............................................28

*Xerion Partners I LLC v. Resurgence Asset Mgmt., LLC*,
    474 F. Supp. 2d 505 (S.D.N.Y. 2007).........................................................19

*Yung v. Lee*,
    160 Fed. App'x 37 (2d Cir. 2005).................................................................18

*Zirvi v. Flatley*,
    433 F. Supp. 3d 448, 462 (S.D.N.Y.), *aff'd*, 838 F. App'x 582 (2d Cir. 2020)......................29

**Statutes, Regulations, and Rules**

9 *Del. C.* § 262 ............................................................................................6

15 U.S.C. § 78u–4(b) .............................................................................18, 19

15 U.S.C. § 78u–5..........................................................................................21

NYDCL § 273 .................................................................................................................36

NYDCL § 276 .................................................................................................................36

Fed. R. Civ. P. 9(b) ................................................................................................... *passim*

**Other Authorities**

Susanne Craig et al., *U.S. Investigating Contract Awards in Buffalo Turnaround Project*, N.Y. Times (Sept. 27, 2015) .........................................................................12

Darren Dahl, *Don't Overlook The Tax-Saving Power Of ESOPs*, Forbes (Dec. 15, 2017), https://www.forbes.com/sites/darrendahl/2017/12/15/dont-overlook-the-tax-saving-power-of-esops/?sh=676182a0310e .............................................4, 5

Rebecca Davis O'Brien & Erica Orden, *Dorm Project Draws N.Y. Attorney General's Scrutiny*, Wall St. J. (May 4, 2016) ..........................................................12

*How an Employee Stock Ownership Plan (ESOP) Works,* Nat'l Ctr. for Emp. Ownership (Aug. 24, 2020), https://www.nceo.org/articles/esop-employee-stock-ownership-plan ....................................................................................................4

Jesse McKinley, *SUNY Polytechnic Office Scoured for Evidence of Bid Rigging*, N.Y. Times (May 26, 2016) .....................................................................................12, 13

Jimmy Vielkind, *Lobbyist steered subpoenaed companies to Cuomo campaign*, Politico (May 9, 2016), https://www.politico.com/states/new-york/albany/story/2016/05/lobbyist-steered-subpoenaed-companies-to-cuomo-campaign-101504 ......................................................................................................12

## PRELIMINARY STATEMENT

This lawsuit is a unadulterated exercise in alleging fraud by hindsight.

Nominal defendant EYP Holdings, Inc., is an architectural and engineering firm. In 2011, two entities affiliated with defendant Long Point Capital, Inc. ("Long Point" or "LPC"), a private equity firm, invested $9 million for a minority interest in EYP, which was then employee-owned. Five years later, EYP's employee shareholders unanimously agreed to convert its ownership structure into an Employee Stock Ownership Plan, or ESOP, and in connection therewith bought out Long Point's equity stake (the "2016 ESOP Transactions").

Four of the eight Plaintiffs (McDougall, Ottavio, Lassor, and Steinbock) here are former EYP employee shareholders who agreed to the 2016 ESOP Transactions, through which they became noteholders of the resulting holding company, nominal defendant EYP Group Holdings, Inc. All could have taken cash, but chose to take notes expressly subordinated to EYP's senior debt. None of the notes has matured, and most will not mature for decades. And as their notes contemplated might happen, interest payments on the notes have been deferred (but continue to accrue) pending payoff of EYP's senior lender.

The remaining four Plaintiffs are a hodgepodge of differently-situated creditors of assorted EYP entities. Kohlberg and Eijadi are two former EYP shareholders who opted out of the 2016 ESOP Transactions and negotiated separate deals through which they received millions in cash plus EYP debt in exchange for their EYP shares. Jurkowski only held EYP promissory notes at the time of the 2016 ESOP Transactions, but no EYP shares. Sears was never an EYP shareholder, but instead acquired EYP promissory notes when EYP acquired a different architecture firm six months *after* the 2016 ESOP Transactions closed. But like those who participated in the 2016 ESOP Transactions, these Plaintiffs' EYP debt instruments were

expressly subordinated to EYP's senior debt, have not matured, and interest payments thereon have been deferred pending payoff of EYP's senior lender.

Unhappy with this state of affairs, Plaintiffs now claim fraud in connection with the acquisition of their notes, as well as various tag-along causes of action.  They assert those claims against eleven defendants, including Long Point and four entities and three individuals affiliated with Long Point—collectively, the "LPC Defendants."[1]

Remarkably, however, Plaintiffs' Third Amended Complaint ("TAC") does not identify a *single* specific representation by any of the LPC Defendants that it contends was false.  The essence of Plaintiffs' theory appears to be that the projections used to value EYP in connection with the purchase of Long Point's stock were inflated, because they failed to incorporate or disclose the risk of lost business resulting from a widely-reported pending criminal investigation of an EYP customer.  But the TAC does not identify *any* projections that were used, let alone plead how they were overstated, who prepared them, what non-public information was not disclosed, or any facts showing that the LPC Defendants (or any other defendant) did not believe the projections to be accurate at the time.  Nor do, or could, Plaintiffs plead reliance on statements or projections that are never identified.

As for damages, their very existence turns on Plaintiffs' contention that EYP is insolvent and thus that their notes will not be paid upon maturity.  Yet Plaintiffs plead no facts—none—in support of their *ipse dixit* assertion that EYP, which has operated continuously since the 2016 ESOP Transactions, is insolvent and has been for nearly five years.

---

[1] Defendants Long Point Capital, Inc., Long Point Capital Fund II, L.P., Long Point Capital Partners II, L.P., Long Point Capital Fund III, L.P., Long Point Capital Partners III, L.P., Ira Starr, Norman Scherr, and Eric Von Stroh.

Equally fundamentally, Plaintiffs simply ignore the terms of the agreements that they executed in connection with the acquisition of their notes. Those agreements (in the case of all but two plaintiffs) expressly disclaim reliance on any representations about the value of EYP, or expressly waive Plaintiffs' ability to pursue the claims asserted here.

Those issues aside, and consistent with its fraud-by-hindsight nature, Plaintiffs' pleading is full of contradictions. For example, Plaintiffs contend that the value of EYP used in connection with the 2016 ESOP Transactions was overstated, yet they seek to recover the full face value of the notes they received in those transactions—all of which were based on the identical valuation. Plaintiffs also contend that EYP ignored the possibility of selling itself to a third-party, Stantec, because Stantec would have discovered that EYP's projections were overstated—but simultaneously contend that Stantec would have paid *more* for EYP.

Plaintiffs have put forth four iterations of their complaint, and thus have had ample opportunity to state their very best allegations. The LPC Defendants respectfully request that the Court dismiss the TAC with prejudice.

## FACTUAL BACKGROUND

The TAC challenges at least six separate transactions that occurred in 2016, but Plaintiffs fail to exhibit any of the documents governing those transactions. That is no accident: those agreements foreclose many of Plaintiffs' claims. Plaintiffs cannot avoid the contents or effect of those agreements by failing to show them to the Court. "In deciding a Rule 12(b)(6) motion, the Court may consider . . . documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint." *In re Merrill Lynch & Co., Inc.*, 273 F. Supp. 2d 351, 356–57 (S.D.N.Y. 2003) (granting motion to dismiss securities fraud claims). Moreover, "[i]f a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court

need not accept the allegations in the complaint as true." *Poindexter v. EMI Record Grp. Inc.*, 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012).

Accordingly, while the LPC Defendants treat many of the Complaint's allegations as true for the purposes of this motion, the factual recitation below draws from the underlying share purchase agreements, merger agreement, and other transaction-related documents.

## I. LPC Funds Provide Financial Investments in EYP Holdings in 2011.

Nominal Defendant EYP Holdings, Inc. is a Delaware corporation that, through its subsidiaries, provides architecture and engineering services. *See* TAC ¶¶ 44, 46–47. In 2011, two entities affiliated with private equity company Defendant LPC invested approximately $9 million purportedly in exchange for a 30 percent share of EYP Holdings. TAC ¶¶ 38, 49.[2] LPC then allegedly appointed three directors to the EYP Holdings board of directors: Defendants Ira Starr, Norman Scherr, and Eric Von Stroh. TAC ¶¶ 39–41, 49. None of Starr, Scherr, or Von Stroh are alleged to have been EYP officers or involved in the day-to-day management of EYP.

## II. EYP's Employee Stockholders Buy Out LPC and Convert EYP into a Tax-Advantaged Employee Stock Ownership Plan in 2016.

In June 2016, EYP's management and employee stockholders decided to buy out the LPC affiliates' interest in EYP and reorganize the company so that it was solely owned by an ESOP. This is a common structure through which companies can realize tax advantages.[3] The 2016

---

[2] The 2011 investment was made by defendants Long Point Capital Fund II, L.P. and Long Point Capital Partners II, L.P. (the "Fund II Defendants"), who received the shares of EYP Holdings, Inc. TAC ¶ 38. In 2014, that investment was transferred to defendants Long Point Capital Fund III, L.P. and Long Point Capital Partners III, L.P. *See* TAC ¶ 38.

[3] An ESOP is a tax-exempt entity through which a company can realize tax advantages, and their employees can acquire equity ownership without having to take in another outside partner. *See How an Employee Stock Ownership Plan (ESOP) Works*, Nat'l Ctr. for Emp. Ownership (Aug. 24, 2020), https://www.nceo.org/articles/esop-employee-stock-ownership-plan ("ESOPs are now widespread; as of the most recent data, 6,460 plans exist, covering 14.2 million people."); *see also* Darren Dahl, *Don't Overlook The Tax-Saving Power Of ESOPs*, Forbes (Dec. 15, 2017),

ESOP Transactions were unanimously approved by all EYP Holdings shareholders (including four of the Plaintiffs), plus all EYP Holdings board members.  Ex. 1 (Merger Agreement, or "MA"), Recitals C–E.[4]

Specifically, on June 28, 2016, Long Point Capital Fund III, L.P. and Long Point Capital Partners III, L.P. (the "Fund III Defendants") sold the bulk of their shares in EYP Holdings to EYP's ESOP, which was managed by trustee Defendant GreatBanc Trust Company, for approximately $44 million in cash, and sold the remainder of their shares to EYP, Inc. for a $3 million promissory note (the "LPC Share Sale").  *See* MA, Recital B.

After the LPC Share Sale, pursuant to the terms of the Merger Agreement, the remaining EYP Holdings shareholders participated in a merger transaction in which (i) EYP Holdings merged with a wholly-owned subsidiary of EYP Group Holdings (which in turn was wholly-owned by EYP's ESOP), with EYP Holdings emerging as the surviving subsidiary corporation; (ii) all outstanding EYP Holdings shares were canceled; and (iii) the now-former EYP Holdings shareholders received so-called Group I and Group II Notes issued by the new parent company, EYP Group Holdings (the "ESOP Merger").  *See* MA, Recitals C–I and §§ 2.1, 2.4, 2.5.

Plaintiffs McDougall, Ottavio, Lassor, and Steinbock (the "Merger Participant Plaintiffs") participated in the ESOP Merger.  Each executed a signature page approving and consenting to the terms of the Merger Agreement.  *See* Ex. 2 (Omnibus Signature Pages).

Four features of the 2016 ESOP Transactions are particularly relevant here.  *First*, while different EYP Holdings shareholders received different *forms* of consideration—the Fund III

---

https://www.forbes.com/sites/darrendahl/2017/12/15/dont-overlook-the-tax-saving-power-of-esops/?sh=676182a0310e ("The whole idea of ESOPs in the first place was to give employees a chance to reap rewards from an increase in the value of the company they work for.").

[4] "Ex" refers to the exhibits to the Declaration of Jonathan M. Sperling, dated April 13, 2021, which is being submitted in connection with the LPC Defendants' Motion to Dismiss the TAC.

Defendants received mostly cash plus a note, while others received notes exclusively—the *value* of the consideration received by all shareholders was based on the same per share valuation.  For example, as disclosed in the Merger Agreement itself, the Fund III Defendants and the Merger Participant Plaintiffs each received the same $5,181.39 per share of EYP Holdings' stock:

- Long Point Capital Fund III, L.P. and Long Point Capital Partners III, L.P.:  8,547.2456 shares sold to the ESOP for $44,286,647.24 in cash, and 578.9948 shares sold to EYP, Inc. for a $3 million promissory note issued by EYP, Inc.;

- Plaintiff McDougall (through the Thomas G. McDougall Trust):  1,133.0418 shares of EYP Holdings canceled, for the right to receive a $5,870,735.98 Group I Note;[5]

- Plaintiff Ottavio (through the Peter D. Ottavio Revocable Living Trust):  924.5744 shares of EYP Holdings canceled, for the right to receive a $4,790,584.37 Group I Note;

- Plaintiff Lassor:  311,821 shares of EYP Holdings canceled, for the right to receive a $1,615,667.30 Group I Note; and

- Plaintiff Steinbock:  200.6158 shares of EYP Holdings canceled, for the right to receive a $951,172.96 Group II Note, 9,064 EYP Group Holdings Warrants, and $37,109 in cash.

MA, Recital B & Schedule I.

Moreover, no EYP shareholder was required to take notes rather than cash.  EYP Holdings is a Delaware corporation; under Delaware law, any shareholder could have declined to participate in the merger and instead exercised appraisal rights to receive "the payment of the fair value of the[ir] shares."  9 *Del. C.* § 262(i).[6]

---

[5] Over a year earlier, on or around March 20, 2015, McDougall allegedly sold 125.8930 shares of EYP Holdings to the company in exchange for a $248,638.68 "redemption" note issued by EYP Holdings.  ECF No. 87-5 ¶ 4(b).  The note was amended on June 28, 2016, and approximately $165,759 of it allegedly remains outstanding.  TAC ¶ 30; Ex. 12 (amended McDougall note).

[6] Plaintiffs allege that EYP stockholders had no appraisal rights, but that is based on mischaracterizing the transaction as a stock "buyback."  TAC ¶ 119.  The Merger Agreement makes clear that there was no buyback; instead, all EYP Holdings shares were canceled after EYP Holdings merged into a subsidiary of EYP Group Holdings.  MA § 2.4.  Thus, each EYP stockholder had appraisal rights under Delaware law.  9 *Del. C.* § 262.

*Second*, the Merger Agreement included an exclusive remedies provision that bars all merger participants (including the four Merger Participant Plaintiffs) from asserting any of the claims that have now been brought against the LPC Defendants. *See* MA § 6.2.5. Specifically, every party to the Merger Agreement "irrevocably waive[d]" all rights and remedies, and "covenant[ed] not to sue or otherwise assert any claim" with respect to the 2016 ESOP Transactions, except for (1) the indemnification claims available under Article 6 (which is not the basis for any claims here), and (2) "claims arising from fraud (other than equitable fraud) on the part of a Seller" (which defined term does not include any LPC Defendant):[7]

> Other than with respect to claims arising from fraud (other than equitable fraud) on the part of a Seller . . . the remedies provided for in this <u>Article 6</u> shall constitute the sole and exclusive remedy for all Losses that any Indemnified Person may suffer or incur arising from, or directly or indirectly relating to, this Agreement, the subject matter of this Agreement or the Contemplated Transactions, and **the parties hereto hereby irrevocably waive any other rights or remedies (whether at law or in equity and whether based on contract, tort, statute or otherwise) that they may otherwise have had, now have or may in the future have against any of the other parties hereto or any of the respective direct or indirect Affiliates, officers, managers, trustees, directors, employees, advisors, stockholders, members, consultants, investment bankers, brokers, controlling persons, partners, managers or other representatives or agents thereof (each of whom shall be an express third party beneficiary hereof) arising from, or directly or indirectly relating to, this Agreement, the subject matter of this Agreement or the Contemplated Transactions and covenant not to sue or otherwise assert any claim (or assist any other Person in suing or otherwise asserting any claim) encompassed by the foregoing covenant, agreement and waiver . . . .**

MA § 6.2.5 (emphasis added).

---

[7] "Seller" means "[t]he Option Holders listed on Schedule II" along with "the Stockholders." *See* MA, Recital D. "Stockholders," in turn, is defined in the first paragraph of the agreement as "the stockholders of the Company set forth on Schedule I." MA at 1. None of the LPC Defendants appear on either Schedules I or II. MA, Schedules I & II.

The Merger Agreement also expressly provided for non-parties, like the LPC Defendants, to enforce Section 6.2.5: "[a]ny Person who is sued or otherwise has a claim asserted against him, her or it in violation of this Section 6.2.5 may enforce the terms of this Section 6.2.5 directly as an express third-party beneficiary hereof." *Id.*

*Third*, the Merger Agreement includes a Delaware choice of law provision, which expressly applies to contract- and non-contract-based causes of action alike:

> This Agreement, the rights of the parties hereunder, and all claims arising in whole or in part out of, related to, based upon, or in connection herewith or the subject matter hereof or the Contemplated Transactions *(whether sounding in contract, tort, statute or otherwise)* will be governed by and construed and enforced in accordance with the laws of the State of Delaware, without giving effect to any choice or conflict of law provision or rule that would cause the application of the laws of any other jurisdiction.

MA § 7.8 (emphasis added).

*Fourth*, the Group I and II Notes issued by EYP Group Holdings to the Merger Participant Plaintiffs and other former EYP Holdings shareholders do not mature until 2051, were expressly subordinated to senior bank debt, and contained provisions that generally prohibited any payment of principal or interest to noteholders until the senior bank debt was fully paid off.  TAC ¶ 25; MA, Ex. A  (Group I Notes) at 1, §§ 2, 6(d); MA, Ex. B (Group II Notes) at 1, §§ 2, 6(d).

## III.   Certain EYP Holdings Shareholders Opt Out of the 2016 ESOP Transactions by Selling Their Shares Prior to Closing.

Not all of the Plaintiffs participated in the 2016 ESOP Transactions.  As detailed below, four plaintiffs each negotiated different agreements with EYP, including two—Plaintiffs Kohlberg and Eijadi—who agreed to disclaimers that bar the claims that they now pursue.

Plaintiff Kohlberg:  By agreement dated September 11, 2015, then-EYP executive director Ed Kohlberg agreed to sell his EYP Holdings shares to the company.  *See* TAC ¶¶ 14, 44, 61; Ex. 8 (Kohlberg Purchase Agreement).  After his death, Plaintiff Marjorie Kohlberg agreed to amend Kohlberg's purchase agreement on behalf of Mr. Kohlberg's estate.  *See* TAC ¶¶ 28, 144; Ex. 9 (Kohlberg Amended and Restated Purchase Agreement).  Under the amended terms, EYP Holdings agreed to pay Mr. Kohlberg's estate over $1.33 million in cash on June 28, 2016 (which EYP did), and another $3.3 million in two later installments subject to the amendment's subordination provisions.  Ex. 9 § 1.  Interest was payable quarterly, "with the first payment due on July 31, 2016."  *Id.*  All payments due, however, were expressly subordinated to senior bank debt, and there generally was no obligation for EYP Holdings to make any payments until the senior bank debt had been paid in full.  Ex. 9 §§ 1–2.

While the per-share consideration for Mr. Kohlberg's shares was lower than that used in the 2016 ESOP Transactions, both the original and amended Kohlberg purchase agreements expressly acknowledged that others may receive a higher per-share price.  Specifically, Kohlberg (both personally and through Marjorie as executor of his estate)

> acknowledge[d] that *no representation has been made that the Per Share Purchase Price is fair to [Kohlberg]* or equal to any purchase price that may be offered in the future or that have been offered to other parties, *nor that the Per Share Purchase Price reflects the actual fair market value of the Shares* or the value of any future transactions, which actual fair market value may be less or more than the Per Share Purchase Price.

Ex. 8 at 2 (original agreement); Ex. 9 at 5 (amended agreement) (emphasis added).

Additionally, in both the original and amended agreements, Kohlberg (both personally and through Marjorie as executor of his estate) "acknowledg[ed] that [Kohlberg] has not relied upon any statements or representations made by any officer, employee, representative or other advisor of EYP in making the decision to sell [Kohlberg's] Shares pursuant to this letter."  *Id.*

Plaintiff Eijadi:  By agreement dated June 8, 2016—20 days before the closing of the

2016 ESOP Transactions—Plaintiff Eijadi (through his trust) sold 584.2660 shares of EYP

Holdings stock for $1.8 million in cash, plus a $900,000 note issued by EYP Holdings that

accrued interest payable quarterly.  *See* Ex. 3 (Eijadi Purchase Agreement and attached

Redemption Note).  Like Kohlberg, Eijadi disclaimed the fairness of the price that he received

and any reliance on any statements by EYP directors, officers, and advisors in connection with

his decision to sell:

> You acknowledge that no representation has been made that the
> Aggregate Consideration is fair to you or equal to any purchase
> price that may be offered in the future or that have been offered to
> other parties, nor that the Aggregate Consideration reflects the
> actual fair market value of the Shares or the value of any future
> transactions, which actual fair market value may be less or more
> than the Aggregate Consideration.  You also acknowledge that you
> have not relied upon any statements or representations made by
> any officer, employee, representative or other advisor of EYP in
> making your decision to sell your Shares pursuant to this letter.

*Id.* at 1–2.[8]  And like Kohlberg and the Group I and II noteholders, further payments on Eijadi's

note were expressly subordinated to senior bank debt, and there was no obligation for EYP

Holdings to make any payments until the senior bank debt had been paid in full.  *Id.* at 7–8,

§§ 1–2.

Plaintiff Jurkowski:  Plaintiff Jurkowski allegedly sold EYP Holdings shares to EYP

Holdings on March 20, 2015 and June 10, 2016.  ECF No. 87-6 ¶ 4(a).  In exchange, she

allegedly received two "redemption" notes issued by EYP Holdings totaling approximately

---

[8] Over a year earlier, on or about March 20, 2015, Plaintiff Eijadi also allegedly sold
approximately 64.914 shares of EYP Holdings shares to the company, for a $128,213.84
"redemption" note issued by EYP Holdings.  ECF No. 87-1 ¶ 4(b).  The note was amended on
June 28, 2016, with payment expressly subject to similar senior debt subordination provisions as
the note that Eijadi's trust received in June 2016.  TAC ¶ 29; Ex 4 (Eijadi amended redemption
note).

$330,000, with interest payable quarterly.  *Id*.; Exs. 5–7 (Jurkowski redemption notes and amendment).  Like other notes, Jurkowski's notes were subordinated to senior bank debt, and there generally was no obligation for EYP Holdings to make any payments until the senior bank debt had been paid in full.  Ex. 6 §§ 1–2 (redemption note); Ex. 7 § 1 (amendment).

Plaintiff Sears:  Plaintiff Sears did not participate in the 2016 ESOP Transactions and never owned EYP Holdings shares.  She allegedly acquired a Group II note issued by EYP Group Holdings on December 30, 2016, through EYP's acquisition of a different architecture firm, SBS.  TAC ¶¶ 35, 151, 245; ECF No. 87-8.  There is no allegation that any LPC Defendant had any interactions with Plaintiff Sears.

## IV. Apparently Unhappy with EYP's Financial Performance Since the ESOP Conversion, Plaintiffs File Suit Four Years Later.

Ninety EYP stockholders agreed to the ESOP Merger in 2016, and received EYP Group Holdings notes as a result.  *See* MA, Schedule I (listing participating EYP stockholders).  Over four years later, on August 7, 2020, four of those consenting stockholders commenced this action, joined by four others who negotiated separate deals with EYP.

Plaintiffs have filed four iterations of their complaint.  *See* ECF Nos. 1, 72, 86, and 97.  The operative version, the TAC, asserts ten causes of action, nine of which name some or all of the LPC Defendants.  The gravamen of the TAC is that Plaintiffs were the victims of a "complex fraudulent scheme" perpetrated by the LPC Defendants and at least three others who are not affiliated with LPC (Tom Birdsey, David Watkins, and GreatBanc), pursuant to which the 2016 ESOP Transactions closed at "a facially inflated price" for EYP Holdings shares as a result of inflated projections of future performance.  TAC ¶ 4.  Plaintiffs do not, however, identify any specific projections or how they were inaccurate.  Nor do Plaintiffs allege what that purportedly inflated price was, or what a non-inflated price would have been.

Plaintiffs also do not identify a single misstatement that any LPC Defendant allegedly made to any Plaintiff.  Instead, Plaintiffs assert that Defendants improperly withheld material information about two issues.  *First*, Plaintiffs allege that a third party, Stantec, had expressed interest in potentially acquiring EYP Holdings.  *See, e.g.*, TAC ¶¶ 55–56.  Plaintiffs' theory regarding the relevance of Stantec is unclear; they appear to inconsistently assert that Stantec would have "discovered" the allegedly inflated projections, but also that Stantec would have paid more for Plaintiffs' shares.  *Compare* TAC ¶¶ 16, 95, *with id.* ¶¶ 56, 58.  Regardless, Plaintiffs do not allege that any of the LPC Defendants knew about any interest from Stantec.  Plaintiffs also do not allege that Stantec ever provided any written expression of interest, let alone offered any price or other terms for any potential transaction.  *See* TAC ¶¶ 51–64.

*Second*, Plaintiffs allege that Defendants concealed an investigation into EYP customer SUNY Polytechnic and its then-President and CEO Alain Kaloyeros, that potentially bore on future business that EYP would receive from SUNY Polytechnic.  TAC ¶¶ 11–12, 16–18.  The TAC does not identify, however, any non-public information that was purportedly withheld prior to the June 2016 close of the ESOP Transactions.  News articles from as early as 2015 reported on the existence of SUNY Polytechnic-related federal and state investigations, and EYP was mentioned in such articles by no later than May 2016.[9]  Plaintiffs do not allege that any charges

---

[9] *E.g.*, Susanne Craig et al., *U.S. Investigating Contract Awards in Buffalo Turnaround Project*, N.Y. Times (Sept. 27, 2015), https://www.nytimes.com/2015/09/28/nyregion/us-investigating-contract-awards-in-buffalo-turnaround-project.html; Rebecca Davis O'Brien & Erica Orden, *Dorm Project Draws N.Y. Attorney General's Scrutiny*, Wall St. J. (May 4, 2016), https://www.wsj.com/articles/dorm-project-draws-n-y-attorney-generals-scrutiny-1462395935; Jimmy Vielkind, *Lobbyist steered subpoenaed companies to Cuomo campaign*, Politico (May 9, 2016), https://www.politico.com/states/new-york/albany/story/2016/05/lobbyist-steered-subpoenaed-companies-to-cuomo-campaign-101504; Jesse McKinley, *SUNY Polytechnic Office Scoured for Evidence of Bid Rigging*, N.Y. Times (May 26, 2016), https://www.nytimes.com/2016/05/27/nyregion/suny-polytechnic-office-scoured-for-evidence-

were ever filed against anyone at EYP, nor that any charges or convictions against anyone occurred until well after the ESOP Transactions closed.  *See* TAC ¶¶ 87–88 (alleging state charges against Kaloyeros filed in September 2016 and a federal conviction of Kaloyeros in July 2018).  The TAC also does not allege why the LPC Defendants would be better situated to predict the impact of the publicly-disclosed investigation on EYP than Plaintiffs, since the TAC alleges that each Plaintiff is an EYP insider who "ha[s] been involved with EYP sufficiently to know its business."  *See* TAC ¶¶ 138 (alleging that all noteholders were current or former EYP employees), 168 (alleging Plaintiffs' familiarity with EYP's business).

Plaintiffs allege that their notes are worthless, on the grounds that, as of the closing of the 2016 ESOP Transactions, "EYP was effectively rendered insolvent, with an inability to meet its ongoing and imminent debts."  TAC ¶ 107.  But Plaintiffs do not (and cannot) allege that EYP has ever filed for bankruptcy, or that EYP has ever ceased operating in the nearly five years since the 2016 ESOP Transactions.  While Plaintiffs allege that they have not received payments on their notes (TAC ¶ 152), no payments are due.  As noted above, none of the notes issued to Plaintiffs have reached their maturity dates, and under their subordination terms, payments generally cannot be made until EYP's senior bank debt is paid in full.  *See supra* pp. 9–11.

## ARGUMENT

Plaintiffs' claims should be dismissed for five principal reasons.

*First*, the claims by six of the eight Plaintiffs are flatly barred by the terms of the agreements that they signed.

---

of-bid-rigging.html.  Copies of these articles are being submitted as Exhibits 15 to 18 of the Declaration of Jonathan M. Sperling, and this Court can take judicial notice of these news articles on a motion to dismiss.  *In re Merrill Lynch Tyco Rsch. Sec. Litig.*, 2004 WL 305809, at *4 n.3 (S.D.N.Y. Feb. 18, 2004) (taking judicial notice of news articles "for the fact of their publication" in considering whether information was available to the market).

*Second*, Plaintiffs fail adequately to plead even one, let alone all, of the elements of their federal securities and common-law fraud claims.  Indeed, Plaintiffs fail to identify even a single specific representation by the LPC Defendants that they contend was false.

*Third*, Plaintiffs' claims for breach of fiduciary duty are time-barred, and in all events fail to plead the elements of the claim.  As for Plaintiffs' derivative claims, Plaintiffs lack standing, as creditors, to pursue such claims, and also fail to plead demand futility.

*Fourth*, Plaintiffs' claims for actual and constructive fraudulent transfer fail for lack of standing.  They also fail because Plaintiffs fail to plead any facts in support of their conclusory assertion that EYP has been insolvent for nearly five years, when EYP has operated as a going concern continuously to this very day.

*Fifth*, the remaining claims for unjust enrichment, civil conspiracy, constructive trust, and reformation fail for sundry reasons detailed below, including that, unjust enrichment aside, none are cognizable causes of action.

Plaintiffs have had four opportunities to refine and perfect their pleading, including in response to defendants' pre-motion letters identifying the various defects in how Plaintiffs have pled their claims.  Accordingly, there is no basis for providing further leave to replead; this action should be dismissed with prejudice.

## I.     Contractual Terms Bar All the Claims of the Merger Participant Plaintiffs (McDougall, Ottavio, Lassor, and Steinbock) and Plaintiffs Kohlberg and Eijadi.

### A.     *The Merger Agreement's Exclusive Remedies Provision Bars All Claims by the Merger Participant Plaintiffs*.

The Merger Agreement's exclusive remedies provision bars all of the claims asserted by the Merger Participant Plaintiffs.  *See Express Scripts, Inc. v. Bracket Holdings Corp.*, __ A.3d __, 2021 WL 752744, at *5–7 (Del. 2021) (enforcing contractual limitation of liability in a securities purchase agreement).  Here, Section 6.2.5 of the Merger Agreement provides that, with

two limited exceptions described further below, the parties "irrevocably waive any other rights or remedies (whether at law or in equity and whether based on contract, tort, statute or otherwise)"—and "covenant not to sue or otherwise assert any claim"—"arising from, or directly or indirectly relating to, this Agreement, the subject matter of this Agreement or the Contemplated Transactions."  MA § 6.2.5.

While the LPC Defendants are not parties to the Merger Agreement, Section 6.2.5's broad waiver and covenant not to sue expressly applies to all claims "against . . . any of the respective direct or indirect Affiliates, . . . directors, . . . stockholders, . . . controlling persons, . . . or other representatives or agents" of any the agreement's parties.  *Id*.  Defendants Starr, Von Stroh, and Scherr were "directors" or "representatives" of party EYP Holdings, Inc.  *See* TAC ¶¶ 39–41.  Plaintiffs also allege that the LPC Entity Defendants (*e.g.*, Long Point Capital, Inc., and the Fund II and Fund III Defendants) are "the controlling stockholder group of EYP," TAC ¶¶ 37–38, and thus each qualifies as a "controlling person" or "stockholder" of EYP Holdings, Inc.  And the LPC Defendants are expressly entitled to enforce Section 6.2.5 against the Merger Participant Plaintiffs because "[a]ny Person who is sued or otherwise has a claim asserted against him, her or it in violation of <u>Section 6.2.5</u> may enforce the terms of this <u>Section 6.2.5</u> directly as an express third-party beneficiary hereof."  MA § 6.2.5.

Neither of the two exceptions to Section 6.2.5's waiver provision applies here.  First are "the remedies provided for in this Article 6."  Those remedies are contractual indemnification provisions that Plaintiffs have chosen not to invoke, and upon which the TAC does not rely.  MA § 6.  Second are "claims arising from fraud (other than equitable fraud) on the part of a Seller." This exception for claims based on fraud by a "Seller" does not encompass claims against the

LPC Defendants:  the Merger Agreement defines "Sellers" as the stock and optionholders listed in Schedules I and II (MA at 1), and none of the LPC Defendants are listed there.

Accordingly, each and every one of the Merger Participant Plaintiffs' claims should be dismissed as barred by Section 6.2.5 of the Merger Agreement.  *Express Scripts, Inc.*, 2021 WL 752744, at \*5–7 (enforcing contractual limitation on remedies).

> B.     *Plaintiffs Eijadi's and Kohlberg's Fraud, Breach of Fiduciary Duty, Conspiracy, and Unjust Enrichment Claims Are Barred By Their Stock Purchase Agreements.*

In their respective purchase agreements, Plaintiffs Kohlberg and Eijadi each expressly disclaimed "reli[ance] upon any statements or representations made by any officer, employee, representative or other advisor of EYP in making the decision to sell" EYP Holdings shares.  Ex. 9 at 5 (Kohlberg); Ex. 3 at 1–2 (Eijadi).  Each also "acknowledge[d] that no representation has been made that [the consideration each received] is fair" or "reflects the actual fair market value of the Shares or the value of any future transactions."  Ex. 9 at 5 (Kohlberg); Ex. 3 at 1–2 (Eijadi).  Under well-settled law in the Second Circuit, these disclaimers of reliance defeat Plaintiffs' claims for securities and common law fraud.  *See Harsco Corp. v. Segui*, 91 F.3d 337, 345–48 (2d Cir. 1996) (affirming dismissal of buyer's federal securities and common law fraud claims for lack of reasonable reliance based on contractual disclaimer); *Katz v. Image Innovations Holdings, Inc*., 2008 WL 4840880, at \*5 (S.D.N.Y. Nov. 5, 2008) ("[T]he Court of Appeals for the Second Circuit has held that a party cannot justifiably rely on a representation that is specifically disclaimed by an agreement" (quotation removed)).

Plaintiffs Kohlberg's and Eijadi's remaining claims also must be dismissed.  As disclosed in their PSLRA certifications, both Kohlberg's and Eijadi's fiduciary duty claims sound in fraud.  ECF No. 87-1 ¶ 4(c) (Eijadi certification that "[a]s alleged in the Amended Compliant . . . in violation of fiduciary duties owed by Defendants, they withheld material information from me

concerning the use of materially false and inflated revenue and profits data to over-leverage EYP beyond what its real value would have supported . . . "); ECF No. 87-7 ¶ 4(b) (same for Kohlberg). Thus, their fiduciary duty claims fail for the same reason as their fraud claims.

Absent an underlying actionable claim for fraud or breach of fiduciary duty, Plaintiffs Kohlberg's and Eijadi's conspiracy claims—each predicated on fraud and fiduciary duty claims, TAC ¶ 205—must be dismissed as well. *See Project Cricket Acquisition, Inc. v. FCP Inv'rs VI, L.P.*, 159 A.D.3d 600, 601, 74 N.Y.S.3d 517, 519 (1st Dept' 2018) ("[T]he civil conspiracy claim . . . is dismissed because it was predicated upon the fraudulent inducement claim that is dismissed herewith"); *77 Charters, Inc. v. Gould*, 2020 WL 2520272, at *23 (Del. Ch. May 18, 2020) ("Civil conspiracy is not an independent cause of action") (quotation omitted).

Likewise, the existence of the Eijadi and Kohlberg agreements precludes their unjust enrichment claims. *HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*, 2021 WL 918556, at *26 (S.D.N.Y. Mar. 10, 2021) ("A claim for unjust enrichment, or quasi contract, may not be maintained where a contract exists between the parties covering the same subject matter." (quoting *Goldstein v. CIBC World Mkts. Corp.*, 776 N.Y.S.2d 12, 14 (1st Dep't 2004)). Moreover, having expressly disclaimed that the value they received was "fair," there can be nothing unjust about the 2016 ESOP Transactions as to Plaintiffs Eijadi and Kohlberg.

## II.  Contractual Limitations Aside, Plaintiffs Fail to State a Claim for Securities or Common Law Fraud.

Count One of the TAC is labeled "Securities Fraud", but fails to identify any federal securities law that Defendants allegedly violated. Paragraph 26 of the TAC, however, invokes Sections 10(b) of the Exchange Act and Rule 10b–5 as the basis, *inter alia*, for subject matter jurisdiction. Count Three asserts common-law fraud.

To state a claim under § 10(b) and Rule 10b–5, Plaintiffs must plead: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Matrixx Initiatives, Inc.* v. *Siracusano,* 563 U.S. 27, 37–38 (2011) (citation and quotation omitted).

The pleading requirements for common-law fraud under both New York and Delaware law are essentially the same as those for securities fraud. *See also Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 207 (Del. Ch. 2006) (outlining similar elements for fraud under Delaware law); *Terra Sec. ASA Konkursbo v. Citigroup, Inc.*, 820 F. Supp. 2d 541, 545 (S.D.N.Y. 2011) (similar under New York law).[10]

Both fraud claims must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), and thus must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000); *see also, e.g.*, *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 182 n.14 (2d Cir. 2015) (state law fraud claims "are governed by Rules 9(b) and 12(b)(6)"); *Yung v. Lee*, 160 Fed. App'x 37, 41–42 (2d Cir. 2005) (upholding district court's dismissal of plaintiffs' federal and common law fraud claims for failure to plead both with particularity). The PSLRA likewise requires that a securities fraud complaint (1) "specify *each* statement alleged to have been misleading [and] the reason or reasons why the statement is misleading," 15 U.S.C.

---

[10] While Delaware and New York law do not refer to "loss causation" by name, loss causation is simply an application of proximate cause, which is an element of fraud under the law of both states. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (holding that plaintiffs must prove that defendant "proximately caused the plaintiff's economic loss" to prove "loss causation" under federal securities laws).

§ 78u-4(b)(1) (emphasis added), and further requires plaintiff to (2) "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2); *ATSI Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).

As detailed below, the gravamen of Plaintiffs' fraud claims is that Defendants relied on inflated projections to establish the prices paid to the Fund III Defendants (and to Plaintiffs) for their EYP stock.  The Second Circuit has firmly rejected, however, the notion of "fraud by hindsight," in which a plaintiff contends that the failure of projections to materialize is somehow evidence of fraud.  *See Xerion Partners I LLC v. Resurgence Asset Mgmt., LLC*, 474 F. Supp. 2d 505, 518 (S.D.N.Y. 2007) (dismissing claims for improper "fraud by hindsight" pleading where plaintiffs failed to demonstrate why valuation statements were false when made).  In addition, "the scienter requirement for forward-looking statements is stricter than for statements of current fact. . . . For a forward-looking statement to be actionable, the plaintiff must show that the statement was made with actual knowledge of its falsity by the speaker."  *In re Philip Morris Int'l Inc. Sec. Litig.*, 437 F. Supp. 3d 329, 355–56 (S.D.N.Y. 2020) (cleaned up).

A.      *Plaintiffs Fail to Plead Any Misstatements by Any LPC Defendant.*

Remarkably, for a fraud complaint, the TAC does not identify a single specific statement by the LPC Defendants that Plaintiffs contend was false.  While the TAC alleges that the 2016 ESOP Transactions were based on inflated projections, it nowhere identifies *any* projection or valuation that was disclosed to Plaintiffs, let alone when, by whom, or how they were false, *i.e.*, the specific items or amounts that rendered the projection or valuation erroneous.

For example, Plaintiffs allege that "Starr, Birdsey and Watkins . . . made numerous presentations to minority stockholders and employees of EYP,"  TAC ¶ 139, but fail to identify any specific false representation in these presentations, where and when these presentations were made, whether any Plaintiff heard and thus could have relied on any of the presentations, and

what about the representation was false.  This allegation also fails to identify which defendant

made any specific representation, and instead improperly "conflat[es] defendants in vague

collective allegations."  *HSM Holdings*, 2021 WL 918556, at *17–18 (dismissing fraud claims

that grouped defendants together "without identifying which of the Defendants made a statement

that the Plaintiff challenges").   "Rule 9(b) is not satisfied where the complaint vaguely attributes

the alleged fraudulent statements to 'defendants.'"  *Mills v. Polar Molecular Corp*., 12 F.3d

1170, 1175 (2d Cir. 1993).

Plaintiffs also allege that on or about January 7, 2016, "Long Point, Birdsey, Starr and

Watkins caused 'working group recommendations' and 'terms for ESOP transaction' to be

circulated" by outside advisors, "knowing it was based on a materially inflated valuation" and

"representations about the business and performance by Defendants."  TAC ¶ 110.  But while

this allegation identifies a date, it again fails to identify the specific facts that Plaintiffs contend

were false, what about them was false, and which defendant was responsible for the specific

representation.  It also fails to plead that any valuations were disclosed to any plaintiff, or facts

showing that any LPC Defendant *knew* that any valuations were false.

Plaintiffs further allege that in or about March 2016, various defendants participated in a

meeting "with an outside professional in connection with valuations for the sale of the stock to

the ESOP, falsely touting contractual rights to $40 million in revenue."  TAC ¶ 12; *see also* TAC

¶ 83.  But the TAC concedes that these representations were not made by any of the LPC

Defendants, and instead only "in Starr's presence."  TAC ¶ 83.  Moreover, the TAC does not

allege that these representations were incorporated in any projection that was used for the 2016

ESOP Transactions' share valuation, explain the magnitude of any impact that the contract had

on either EYP's projections or any valuation of the company, or assert that any Plaintiff received

or relied upon any projection or valuation that was purportedly inflated by the improperly presented contract.  Plaintiffs also plead no facts suggesting that Starr had the requisite knowledge of the purported falsity; for example, Plaintiffs do not plead facts indicating the that the strategist was right (and Birdsey was wrong), or that Starr knew that to be the case.

Plaintiffs' main complaint appears to be that forward-looking projections prepared in connection with the 2016 ESOP Transactions did not accurately predict the business losses resulting from Kaloyeros' criminal case and conviction in July 2018.  TAC ¶¶ 84–88.  But in addition to failing to identify any projections that were shown to Plaintiffs, *see supra* pp. 12, the only allegations that Plaintiffs make about any of the LPC Defendants' involvement in creating projections improperly relies on grouping "Birdsey, Starr, Watkins and Long Point" together, without specifying any role that each purportedly had in preparing any projections.  Moreover, the TAC elsewhere claims that the "estimates and forecasts of future financial performance [were] prepared by or reviewed with *management* of" EYP—not any of the LPC Defendants. *See* TAC ¶ 110 (emphasis added); *In re Am. Int'l Grp. Inc. Derivative Litig.*, 700 F. Supp. 2d 419, 435–36 (S.D.N.Y. 2010) (noting that directors and managers have different roles).

Plaintiffs' claims also fail because projections are forward-looking statements and are not actionable for fraud absent actual knowledge of their falsity.  15 U.S.C. § 78u–5; *see, e.g.*, *In re Philip Morris Int'l Inc. Sec. Litig.*, 437 F. Supp. 3d at 357 ("The aforementioned forward-looking statements are also protected under the PLSRA for the independent reason that Plaintiffs have failed to establish that they were made with actual knowledge by the speaker that the statement was false or misleading.") (cleaned up).  Plaintiffs plead no facts showing such knowledge; their allegations that the projections did not, in hindsight, accurately predict the future impact of the SUNY Polytechnic investigation after June 28, 2016 do not, absent much more, state a claim for

fraud.  *See Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*, 164 F. Supp. 3d 568, 581 (S.D.N.Y.

2016) (finding no duty to disclose uncharged criminal conduct absent "a connection between the

illegal conduct and the misleading statements beyond the simple fact that a criminal conviction

would have an adverse impact upon the corporation's operations") (quotation omitted).

We note further that no alleged misstatement made after the 2016 ESOP Transactions

could form the basis of a fraud claim against the LPC Defendants in any event.  Specificity of

any pleading aside, all Plaintiffs except for Sears acquired their EYP notes on or before June 28,

2016, so they could not have relied on any allegedly fraudulent statements made after that date.

*See, e.g.*, *Schwartz v. Novo Industri, A/S*, 658 F. Supp. 795, 799 (S.D.N.Y. 1987) (dismissing

claims based on post-purchase statements); *Levine v. NL Indus., Inc.*, 720 F. Supp. 305, 308

(S.D.N.Y. 1989) (dismissing claims based on representations made after the plaintiff acquired

stock).  As for Plaintiff Sears, she does not allege any contact with any LPC Defendants prior to

her acquisition of her note on December 31, 2016.  *See* TAC ¶¶ 113–15.

> B.      *Plaintiffs Fail to Plead Any Actionable Omissions by Any LPC Defendant.*

Plaintiffs allege improper omissions of two types of information: (1) Stantec's purported

interest in acquiring EYP in 2015, TAC ¶¶ 55–62, and (2) a criminal investigation into SUNY

Polytechnic and Kaloyeros, *id.* ¶ 11.  To plead an actionable securities or common law fraud

claim based on omissions, Plaintiffs may plead that the LPC Defendants "omit to state a material

fact necessary in order to make the statements made not misleading."  *See In re Vivendi, S.A.*

*Sec. Litig.*, 838 F.3d 223, 239 (2d Cir. 2016) (cleaned up) (quoting 17 C.F.R. § 240.10b–5(b)).

Here, the TAC does not identify any statement that allegedly was rendered misleading by such

omissions, nor allege how the omission rendered it misleading.

Plaintiffs also do not allege any "duty to disclose the omitted facts" as required to

proceed on a "pure omission" theory of fraud.  *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d at 239;

*Corp. Prop. Assocs. 14 Inc. v. CHR Holding Corp.*, 2008 WL 963048, at *6 (Del. Ch. Apr. 10, 2008) ("[M]ere silence about facts material to another party is not fraud unless the party who remains silent has a duty to disclose those facts."); *Meda AB v. 3M Co.*, 969 F. Supp. 2d 360, 385 (S.D.N.Y. 2013) (citing *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)) ("Claims for fraudulent omission require a duty to disclose.").  As a threshold matter, the only duty to disclose that Plaintiffs plead arise from "fiduciary duties" that were allegedly owed by (i) Starr, Scherr, and Von Stroh as EYP directors, TAC ¶¶ 39–41, and (ii) the LPC Entity Defendants as "member[s] of the controlling stockholder group," TAC ¶¶ 37–38.  This forecloses pure omission-based fraud claims from Plaintiffs Kohlberg, Eijadi, Jurkowski, and Sears because none of those Plaintiffs owned EYP Holdings shares when the 2016 ESOP Transactions closed.  *See N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92, 99 (Del. 2007) (noting that "[i]t is well established that the directors owe their fiduciary obligations to the corporation and its shareholders" and "the general rule is that directors do not owe creditors duties beyond the relevant contractual terms") (quotation omitted); *In re Midway Games Inc.*, 428 B.R. 303, 316 n.6 (Bankr. D. Del. 2010) (dismissing claims against controlling shareholders because "if directors do not have a duty to protect creditors, a controlling shareholder certainly does not").  Accordingly, the omission-based fraud claims brought by Plaintiffs Kohlberg, Eijadi, Jurkowski, and Sears must be dismissed.

Even assuming that any of the LPC Defendants had any disclosure obligations to any plaintiff, the LPC Defendants had no duty to disclose any allegedly omitted information about Stantec or SUNY Polytechnic.  *First*, Plaintiffs never allege how or when any LPC Defendant became aware of Stantec's potential interest, such that they could even be obliged to disclose it to anyone before the 2016 ESOP Transactions.

*Second,* in "an action for a breach of fiduciary duty arising out of disclosure violations in connection with a request for stockholder action . . . [t]he essential inquiry . . . is whether the alleged omission or misrepresentation is material." *Malone v. Brincat*, 722 A.2d 5, 12 (Del. 1998). And, critically, "the existence of preliminary negotiations regarding a transaction generally becomes material once the parties have agreed on the price and structure of the transaction." *In re Wayport, Inc. Litig.*, 76 A.3d 296, 321 (Del. Ch. 2013) (quotation omitted). Here, however, Stantec's alleged interest was nascent at best. For example, Plaintiffs allege no written expression of interest, any price or other terms offered, or any acquisition-related due diligence, or even any direct communications with anyone at EYP. *See* TAC ¶¶ 55–58 (alleging discussions between a third-party consultant and a Stantec Vice President, but no discussions with anyone at EYP). The allegedly omitted information therefore was not material as a matter of law. *See Thesling v. Bioenvision, Inc.*, 374 Fed. App'x 141, 143 (2d Cir. 2010) (dismissing claims because "no express duty requires the disclosure of merger *negotiations*, as opposed to a definitive merger *agreement*") (emphasis in original).

*Third*, Plaintiffs never disclose what, if any, non-public information the LPC Defendants purportedly knew but did not disclose to Plaintiffs about the SUNY Polytechnic investigation. The fact that SUNY Polytechnic and Kaloyeros were the targets of a criminal bid-rigging investigation was widely reported in the press as early as 2015—well before the June 28, 2016 closing of the 2016 ESOP Transactions. *See supra* pp. 13 n.9; Exs. 15–18. The LPC Defendants cannot be liable for any failure to disclose that publicly available information to Plaintiffs. *See Seibert v. Sperry Rand Corp.*, 586 F.2d 949, 952 (2d Cir. 1978) (finding defendant was not liable for failure to disclose information that was in the public domain).

Nor could the LPC Defendants be held liable for failing to disclose the existence of any illegal or criminal activity at EYP. Plaintiffs have not (and cannot) allege that Birdsey or anyone else at EYP was ever charged with or convicted of any crimes in connection with SUNY Polytechnic. At most, Plaintiffs allege that, Birdsey was the "Architect-1" referred to in a state complaint filed not against Birdsey, but against Kaloyeros. TAC ¶¶ 87–88. This state complaint also was filed three months *after* the 2016 ESOP Transactions closed, and never resulted in any conviction. *See* TAC ¶¶ 87–88 (alleging that Kaloyeros was convicted of federal but not state charges). This does not give rise to any disclosure obligation. *See City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 184 (2d Cir. 2014) ("[C]ompanies [generally] do not have a duty to disclose uncharged, unadjudicated wrongdoing.") (quotation omitted); *In re Sanofi Sec. Litig.*, 155 F. Supp. 3d 386, 403 (S.D.N.Y. 2016) ("Courts in this district regularly hold that the securities laws do not impose a general duty to disclose corporate mismanagement or uncharged criminal conduct.").

At bottom, the TAC simply alleges that "all the Defendants knew that the highly-profitable SUNY Polytechnic business was in jeopardy." TAC ¶ 84. But it pleads no facts supporting the conclusory implication that the LPC Defendants had a basis to know this more than any of the Plaintiffs, each of whom the TAC affirmatively alleges is an EYP insider who "ha[s] been involved with EYP sufficiently to know its business." *See* TAC ¶¶ 138, 168.

Plaintiffs also allege a failure to disclose the existence of prior business relationships between Long Point Capital, Inc. and GreatBanc. TAC ¶¶ 75, 77, 156. But Plaintiffs fail to explain how non-disclosure of any such relationship constituted a false material misrepresentation or omission. *See Serova v. Teplen*, 2006 WL 349624, at *6–8 (S.D.N.Y. Feb. 16, 2006) (dismissing securities and common law fraud claims based on a failure to disclose past

and ongoing business relationships).  Rather, Plaintiffs' allegations demonstrate that Long Point had a trusted working relationship with GreatBanc.  Nor do Plaintiffs allege that either Long Point or GreatBanc possessed the requisite state of mind when they purportedly failed to disclose prior working relationships.

> C.    *Plaintiffs Fail to Plead Scienter.*

Plaintiffs do not "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  *ATSI*, 493 F.3d at 99 (quoting 15 U.S.C. § 78u–4(b)(2)); *see also, e.g.*, *Bay Harbour Mgmt. LLC v. Carother*s, 282 Fed. App'x 71, 77 (2d Cir. 2008) (affirming dismissal of federal and common law fraud for failing to satisfy Fed. R. Civ. P. 9(b)).  "The plaintiff may satisfy this requirement by alleging facts (1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness."  *ATSI*, 493 F.3d at 99.  And as noted above, with respect to forward-looking statements such as projections, "plaintiff[s] must show that the statement was made with actual knowledge of its falsity by the speaker."  *In re Philip Morris Int'l Inc. Sec. Litig.*, 437 F. Supp. 3d at 355–56 (cleaned up).  Scienter must be pled individually as to each defendant.  *In re AstraZeneca Sec. Litig.*, 559 F. Supp. 2d 453, 472 (S.D.N.Y. 2008) ("The group pleading doctrine cannot apply to create a presumption of scienter as to individual defendants.").

Here, Plaintiffs do not even attempt to plead motive with respect to any LPC Defendant besides Long Point Capital, Inc.  *See* TAC ¶ 156.  And the only motive alleged against Long Point Capital, Inc.—"cash," *id.*—is insufficient to plead scienter.  *In re Oxford Health Plans, Inc. Sec. Litig.*, 51 F. Supp. 2d 290, 294 (S.D.N.Y. 1999) (holding "generalized economic interests" insufficient to plead scienter).

Nor do Plaintiffs plead opportunity or any circumstantial evidence of conscious misbehavior or recklessness. As detailed above, Plaintiffs do not plead any LPC Defendants' awareness of Stantec's purported interest in EYP, knowledge of any non-public information concerning the SUNY Polytechnic investigation, or role in preparation of any valuation for the 2016 ESOP Transactions. *See supra* pp. 19–22.

    D.    *Plaintiffs Fail to Plead Damages or Loss Causation.*

The fraud claims must be dismissed because Plaintiffs did not plead any damages. To succeed on a fraud claim, Plaintiffs must show they "suffered actual economic loss." *Dura Pharm., Inc.*, 544 U.S. at 344–46 (explaining that federal securities law, like common law, requires plaintiffs to "adequately allege and prove the traditional elements of causation and loss"). Here, Plaintiffs cannot plead damages because they have not suffered any economic loss.

*First*, Plaintiffs claim "EYP has failed to make the contemplated installment payments on notes," TAC ¶ 99, but they have not alleged that there has been any default on the terms of any notes. The payment obligation in each note is expressly subordinated to senior debt, and provides that no payments on any interest or principal would be made if certain senior debt covenants are not met. *See* Ex. 3–14 (Plaintiffs' Notes). In addition, none of Plaintiffs' notes have yet matured. *See, e.g.*, TAC ¶ 138 (alleging maturity dates ranging from December 2021 to 2051). Thus, the lack of payment on Plaintiffs' notes has nothing to do with any alleged fraud perpetrated by the LPC Defendants. Indeed, because the notes have not matured, and Plaintiffs fail to plead any default or any facts showing that EYP will not be able to pay the notes when they are due, Plaintiffs fail to plead any damages.

*Second*, Plaintiffs' claims that the notes are "virtually worthless" is entirely conclusory. *See, e.g.*, TAC ¶ 2. Plaintiffs baldly assert that EYP is "insolvent" (despite never having declared bankruptcy), but plead no facts establishing insolvency or otherwise indicating that

EYP will not be able to pay off all note principle and interest when it all becomes due. Plaintiffs' entirely conclusory allegations are insufficient to survive dismissal. *ATSI*, 493 F.3d at 99 (noting that "[a]llegations that are conclusory or unsupported by factual assertions are insufficient" to plead securities fraud).

*Third,* Plaintiffs fail to plead loss causation. To plead loss causation, "plaintiff's complaint must plead that the loss was foreseeable and caused by the materialization of the risk concealed by the fraudulent statement" *ATSI*, 493 F.3d at 107. Here, having failed to identify any loss, Plaintiffs necessarily fail to plead loss causation. Moreover, even if Plaintiffs could identify a loss, they fail to plead any facts showing that it resulted from the materialization of the concealed risk (*i.e.*, any loss of SUNY Polytechnic business or failure to pursue a transaction with Stantec), as opposed to the company simply not performing as projected. In fact, Plaintiffs plead that "[a]s of June 28, 2016, EYP was effectively rendered insolvent," suggesting that any later loss of the SUNY Polytechnic business had no impact on EYP's value. *See* TAC ¶ 107. As for Stantec, Plaintiffs allege that had Stantec engaged in due diligence, it would have "raise[d] questions about, among other things, Birdsey's relationship with SUNY Polytechnic and EYP's value," which suggests that any Stantec transaction would have closed, if at all, at a lower valuation than the 2016 ESOP Transactions. TAC ¶ 95.

## III. Contractual Limitations Aside, Plaintiffs Fail to Plead a Claim For Breach of Fiduciary Duty.

Plaintiffs' claims for breach of fiduciary duty are governed by Delaware law, the state in which EYP Group Holdings and EYP Holdings are both incorporated. *Willensky v. Lederman*, 2015 WL 327843, at *5 n.8 (S.D.N.Y. Jan. 23, 2015) ("[I]n New York, the internal affairs of a corporation are governed by the law of the state of incorporation.") (quotations omitted). Under

Delaware law, Plaintiffs' claims must be dismissed because they are time barred, and even if timely brought, fail to state a claim.

       A.       *All Fiduciary Duty Claims Are Time-Barred By the Statute of Limitations.*

Under Delaware law, "[a] three-year statute of limitations applies to breaches of fiduciary duty." *In re Tyson Foods, Inc.*, 919 A.2d 563, 584 (Del. Ch. 2007). Plaintiffs' fiduciary duty claims arise from transactions that closed in June 2016, so the claims expired in June 2019. Indeed, the Complaint essentially concedes that, absent a basis for tolling the statute of limitations period, Plaintiffs' fiduciary duty claims are time-barred. *See* TAC ¶ 135.

Plaintiffs do not adequately plead any basis for tolling the limitations period. The tolling agreement referred to in the Complaint (TAC ¶ 155) was not effective until June 26, 2020, and did not revive any limitations periods that had expired before then. *See* Ex. 19 ¶ 3 ("Nothing contained herein shall be construed as a waiver of any right or defense that a Party may have against another that existed or had accrued before the Effective Date.").

Plaintiffs also fail adequately to plead tolling through fraudulent concealment, which "is subject to the particular pleading requirements set forth in Federal Rule of Civil Procedure 9(b)." *Zirvi v. Flatley*, 433 F. Supp. 3d 448, 462 (S.D.N.Y.) (internal quotation omitted), *aff'd*, 838 F. App'x 582 (2d Cir. 2020). Under Delaware law, "fraudulent concealment requires an *affirmative act of concealment* by a defendant—an 'actual artifice' that prevents a plaintiff from gaining knowledge of the facts or some misrepresentation that is intended to put a plaintiff off the trail of inquiry." *In re Dean Witter P'ship Litig.*, 1998 WL 442456, at *5 (Del. Ch. July 17, 1998) (emphasis added), *aff'd*, 725 A.2d 441 (Del. 1999). "Mere silence or failure to disclose does not constitute such fraudulent concealment as will suspend operation of a statute of limitations." *S&R Assocs., L.P. v. Shell Oil Co.*, 725 A.2d 431, 435–36 (Del. Super. 1998) (cleaned up).

Here, Plaintiffs fail to plead any acts of any kind by Von Stroh, Scherr, or the Fund II or III Defendants after the June 28, 2016 close of the 2016 ESOP Transactions, let alone any "affirmative acts of concealment."  *See, e.g.*, TAC ¶¶ 116–36.

Nor does the TAC plead with particularity any affirmative acts of concealment by the other LPC Defendants.  *First*, the only allegations regarding post-June 28, 2016 conduct do not attribute any act to any single defendant, but rather refers to multiple defendants collectively. TAC ¶¶ 116, 118, 120–22, 124, 128–30, 132–33.  Fraudulent concealment cannot be pleaded through such improper group pleading.  *See Mills*, 12 F.3d at 1175 ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'"); *In re Cross Media Mktg. Corp. Sec. Litig.*, 314 F. Supp. 2d 256 (S.D.N.Y. 2004) (finding improper group pleading where there were "[n]o allegations containing specific acts by each of the individual Defendants" except one).

*Second,* Plaintiffs' allegations simply do not plead any "actual artifice."  The only allegedly false act of concealment that Plaintiffs plead with any particularity is a statement by Birdsey, purportedly made on March 24, 2017, that "[a]lthough formation of the ESOP *enhanced* our ability to make these covenant and tests and resulting payments, unfortunately the business results were such that the payments would have been disallowed either with or without the ESOP transaction."  TAC ¶ 121 (emphasis in original).  But while the TAC alleges that Starr (but not any other LPC Defendant) was an EYP director at the time, the TAC does *not* allege that Starr had any connection with that purported statement.  *Id*.  Nor is Birdsey's statement sufficient to plead fraudulent concealment.  "[S]tatements of cautious optimism, reiterations of the goal of providing income to investors, and explanations for past poor performance do not rise to the level . . . necessary to excuse a reasonable investor from the duty of inquiry."  *Farr v. Shearson*

*Lehman Hutton, Inc.*, 755 F. Supp. 1219, 1228 (S.D.N.Y. 1991).  Accordingly, Plaintiffs have not alleged a basis to toll the applicable three-year limitations period.[11]

        B.      *Even If the Claims Were Not Time-Barred, Plaintiffs Fail To State a Claim For Breach of Fiduciary Duty.*

        1.      Plaintiffs Cannot Pursue Any Derivative Claims.

Plaintiffs cannot bring derivative claims because they lack standing to do so, and in all events have failed to adequately plead pre-suit demand futility.

*First*, every Plaintiff was a creditor of an EYP entity when they commenced suit.  Under Delaware law, however, creditors have standing to pursue derivative claims only when the corporation is insolvent.  *See Quadrant Structured Prods. Co., Ltd. v. Vertin*, 102 A.3d 155, 176 (Del. Ch. 2014) ("*Vertin I*") ("[U]pon a corporation's insolvency, its creditors gain standing to bring derivative actions for breach of fiduciary duty, something they may not do if the corporation is solvent.") (quotation and citation omitted).

Accordingly, "[t]o bring a derivative action, the creditor-plaintiff must plead and later prove insolvency under the traditional balance sheet or cash flow tests."  *Quadrant Structured Prods. Co., Ltd. v. Vertin*, 115 A.3d 535, 539 (Del. Ch. 2015) ("*Vertin II*").  Plaintiffs do not so much as mention those tests, let alone plead any facts showing how one or the other is met.

---

[11] Moreover, even if the statute of limitations was briefly tolled, "tolling ends where plaintiff discovers, or in the exercise of reasonable diligence should have discovered, his injury." *Ryan v. Gifford*, 918 A.2d 341, 359 (Del. Ch. 2007). Here, Plaintiffs assert that that EYP's inability to pay on the notes that they received or renegotiated in 2016 was fraudulently concealed after the 2016 transactions. *See* TAC ¶¶ 116–36.  But at least Plaintiffs Kohlberg, Eijadi, and Jurkowski each held notes that provided for interest to be "payable . . . quarterly," as early as "July 31, 2016." *See* Ex. 9 (Kohlberg); *see also* Exs. 3 (Eijadi), 5 (Jurkowski).  When EYP failed to make the first of those interest payments, Plaintiffs were on inquiry notice of the claims that they assert now. *See Litman v. Prudential-Bache Props., Inc.*, 1994 WL 30529, at *6 (Del. Ch. Jan. 14, 1994) (holding that the disclosure of "cash flow problems and project defaults was enough to put a reasonable investor on notice that some aspects of the Partnership were not performing as expected").  Accordingly, any tolling would have ended by July 31, 2016, and Plaintiffs' claims would still have been time barred as of July 31, 2019.

Instead, they simply assert in *ipse dixit* fashion that "[a]s of June 28, 2016, EYP was effectively rendered insolvent, with an inability to meet its ongoing and imminent debts." TAC ¶ 107. That is insufficient to plead the insolvency needed for derivative standing. *In re Trinsum Grp., Inc.*, 460 B.R. 379, 394 (Bankr. S.D.N.Y. 2011) (to plead insolvency under the balance sheet test, "there must be some sort of financial data or analysis provided so that the court can infer the company's liabilities exceeded its assets at the time the transfers in question took place").

*Second*, Plaintiffs failed to make a pre-suit demand on the boards of either nominal defendant, and thus "must allege with particularity that [their] failure to make such a demand should be excused." *Teamsters Union 25 Health Servs. & Ins. Plan v. Baiera*, 119 A.3d 44, 56 (Del. Ch. 2015). "To establish demand futility . . . Plaintiff[s] must impugn the ability of at least half of the directors in office when [they] initiated this action (*i.e.,* the Demand Board) to have considered a demand impartially." *Id*. at 57. Moreover, in alleging demand futility, "a derivative complaint must plead facts *specific to each director* . . . ." *Desimone v. Barrows*, 924 A.2d 908, 943 (Del. Ch. 2007) (emphasis in original).

Here, Plaintiffs' allegations that certain EYP directors do not object to their filing a lawsuit (TAC ¶ 175), and EYP's purported lack of funds to pursue direct claims (*id*. ¶ 176), do not bear on the only relevant analysis: whether a majority of either the EYP Group Holdings or EYP Holdings boards is unable to consider a pre-suit demand impartially. Even assuming that Plaintiffs adequately plead that Birdsey, Watkins, and Starr are not impartial, they were but three of ten directors of EYP Group Holdings and EYP Holdings at the time the action was commenced. *In re Morgan Stanley Derivative Litig.*, 542 F. Supp. 2d 317, 322 (S.D.N.Y. 2008) (demand futility "must be raised as to a majority of the board of directors sitting at the time the complaint is filed"). And while Plaintiffs allege that the Board is "dysfunctional", that is not a

substitute for pleading particularized facts, specific to each director, showing that a majority are incapable of exercising their disinterested business judgment in evaluating whether the Company should assert the claims Plaintiffs seek to bring here derivatively.  *In re Affiliated Comput. Servs., Inc. S'holders Litig.*, 2009 WL 296078, at *10 (Del. Ch. Feb. 6, 2009) (refusing to excuse pre-suit demand "in the absence of well pleaded allegations showing interest or domination" even through the board was allegedly "in the midst of internal warfare").

       C.       *The LPC Defendants Did Not Owe the Non-Merger Participant Plaintiffs Any Fiduciary Duties at the Time of the 2016 ESOP Transactions.*

Under Delaware law, "[r]egardless of whether a corporation is solvent or insolvent, creditors cannot bring direct claims for breach of fiduciary duty." *Vertin II*, 115 A.3d at 546. Plaintiffs allege that the LPC Defendants breached fiduciary duties owed to them as minority shareholders of EYP Holdings at the time of the 2016 ESOP Transactions.  *See* TAC ¶¶ 191–94. But only Merger Participant Plaintiffs McDougall, Ottavio, Lassor, and Steinbock owned EYP Holdings shares when the 2016 ESOP Transactions closed.  Plaintiffs Eijadi, Kohlberg, and Jurkowski all sold their shares *before* then, and Plaintiff Sears never owned any EYP shares.  *See supra* pp. 9–11.  As such, none of the LPC Defendants could have owed Plaintiffs Eijadi, Kohlberg, Jurkowski, or Sears any fiduciary obligations at the time of the 2016 ESOP Transactions.  *Omnicare, Inc. v. NCS Healthcare, Inc.*, 809 A.2d 1163, 1169 (Del. Ch. 2002) ("[A]s a general rule, only persons who were stockholders at the time of an alleged wrongdoing have standing to sue corporate directors for breach of fiduciary duty.").

       D.       *Plaintiffs Plead No Breach of Fiduciary Duties.*

The gravamen of Plaintiffs' fiduciary duty claim against the LPC Defendants is that the LPC Share Sale was a self-dealing transaction in breach of the duties of loyalty owed to Plaintiffs.  *See* TAC ¶ 105 & Count II ("Breach of Fiduciary Duty of Loyalty . . . .").  These

claims fail because (1) the LPC Defendants did not stand on both sides of the sale of its shares for $44 million in cash, and (2) Plaintiffs have not satisfied the heightened pleading standards for establishing a breach of fiduciary duty based on fraud.

*First*, "the term self-dealing describes the situation when a corporate fiduciary is on both sides of a transaction.'" *Cinerama, Inc. v. Technicolor, Inc.*, 663 A.2d 1156, 1169 (Del. 1995) (cleaned up). That did not occur here. The only cash that the LPC Defendants received as part of the 2016 ESOP Transactions was from a third-party in which none of the LPC Defendants have any interest—the ESOP. Accordingly, no LPC Defendant stood on both sides of that $44 million transaction. *See In re Martha Stewart Living Omnimedia, Inc. Stockholder Litig.*, 2017 WL 3568089, at *11 (Del. Ch. Aug. 18, 2017) (finding no conflicted transaction where the controlling stockholder "stood only on the sell-side of this transaction and was independent of the buyer").

*Second*, Plaintiffs claim breach of fiduciary duties through fraudulent conduct. *See* TAC ¶ 105 (alleging that certain LPC Defendants breached fiduciary duties by engaging in self-dealing "while withholding (in violations of duties to disclose) material information concerning the inflated violations on which pricing was based"). But to do so, they must satisfy Rule 9(b)'s heightened pleading standards. *In re Merrill Lynch & Co., Inc. Rsch. Reports Sec. Litig.*, 2008 WL 2594819, at *8 (S.D.N.Y. June 26, 2008) ("Rule 9(b)'s heightened pleading standards apply to breach of fiduciary duty claims where the breach is premised on the defendant's fraudulent conduct such as an attempt to induce action or inaction on the part of the investors by means of falsehoods or material omissions") (quotation and alteration omitted). Here, Plaintiffs' fraud-based fiduciary duty claims must be dismissed for the same reasons that their federal and common law fraud claims fail. *See supra* Section II.

**IV.     Contractual Limitations Aside, Plaintiffs Fail to Plead a Claim for Actual or Constructive Transfer.**

Plaintiffs claim constructive fraudulent conveyance against Starr and Long Point Capital Fund III, and intentional fraudulent conveyance against Long Point Capital Fund III, arising from the LPC Share Sale.  TAC ¶¶ 213–25.  Delaware law applies to Plaintiffs' claims due to the broad choice-of-law provision in the Merger Agreement.  *See* MA § 7.8 (providing that Delaware law will govern "all claims arising in whole or in part of, related to, based upon, or in connection" with the 2016 ESOP Transactions, including those "sounding in contract, tort, statute or otherwise").  Plaintiffs fail to state fraudulent conveyance claims as a matter of law.

A.     *Plaintiffs Lack Standing to Sue.*

Plaintiffs do not have standing to challenge the LPC Share Sale as a fraudulent transfer because none of the Plaintiffs are creditors of any entity that made any transfer as part of the LPC Share Sale.  Under Delaware law, creditors can only challenge transfers made by their debtor.  *See Edgewater Growth Capital Partners, L.P. v. H.I.G. Capital, Inc.*, 2010 WL 720150, at *2 (Del. Ch. Mar. 3, 2010) ("By its own terms, the Delaware Fraudulent Transfer Act only provides for a cause of action by a creditor against debtor-transferors or transferees.").  Accordingly, "[f]raudulent transfer liability under [Delaware law] does not attach to a transfer by a *non-debtor*."  *In re NewStarcom Holdings Inc.*, 816 Fed. App'x 675, 678 (3d Cir. 2020) (emphasis in original).[12]  Here, Plaintiffs are creditors of either EYP Group Holdings, Inc. or EYP Holdings, Inc.  Ex. 3–14 (Plaintiffs' Notes); ECF No. 87-8 (Sears' PSLRA certification).  But Long Point Capital Fund III sold its shares to, and received consideration from, neither of

---

[12] New York law also requires that Plaintiffs be creditors of the transferor.  *Eberhard v. Marcu*, 530 F.3d 122, 129 (2d Cir. 2008) ("It is well settled that in order to set aside a fraudulent conveyance, one must be a creditor of the transferor; those who are not injured by the transfer lack standing to challenge it.").

those entities: it sold its shares to the ESOP (managed by GreatBanc as trustee) for cash, and to

EYP, Inc., for a promissory note. *See* MA, Recital B. And Starr was not a party to the LPC

Share Sale at all. Because Plaintiffs are not creditors of any entity that made any transfer to

Long Point Capital Fund III or Starr, the fraudulent transfer claims must be dismissed. *See In re*

*NewStarcom Holdings Inc.*, 816 Fed. App'x at 679 (affirming dismissal of fraudulent transfer

claims asserted against a non-debtor transferor under Delaware law).

B.      *Plaintiffs Fail to Plead Actual or Constructive Fraudulent Transfer with Sufficient Specificity.*

Lack of standing aside, Plaintiffs fail to adequately plead the elements of actual or

constructive fraudulent transfer. Delaware law "provides remedies to creditors who are

defrauded by debtors who transfer assets or incur obligations '[w]ith actual intent to hinder,

delay or defraud any creditor of the debtor' (*i.e.*, an actual fraudulent transfer), or, in certain

circumstances, '[w]ithout receiving reasonably equivalent value' (*i.e.*, a constructively fraudulent

transfer)." *Ki-Poong Lee v. So*, 2016 WL 6806247, at *3 (Del. Super. Ct. Nov. 17, 2016).[13]

Like other fraud claims, actual fraudulent transfer is subject to the heightened pleading

requirements of Rule 9(b). *See Atlanta Shipping Corp., Inc. v. Chemical Bank*, 818 F.2d 240,

251 (2d Cir. 1987) (upholding district court's order requiring plaintiff to replead state law

fraudulent conveyance claim with particularity); *Waite v. Schoenbach*, 2010 WL 4456955, at *6

(S.D.N.Y. Oct. 29, 2010) (dismissing state law fraudulent conveyance claim); *In re White Metal*

*Rolling & Stamping Corp.*, 222 B.R. 417, 428 (Bankr. S.D.N.Y. 2011) ("It is well-settled that the

Rule 9(b) pleading requirements apply to claims of intentional fraudulent transfer.").

---

[13] New York law similarly recognizes actual fraudulent transfer as a conveyance made "with actual intent . . . to hinder, delay, or defraud either present or future creditors," while constructive fraudulent transfer is a conveyance that is "without a fair consideration," even absent actual intent. *See* NYDCL §§ 276, 273.

Here, Plaintiffs fail to plead any facts to give rise to "a strong inference of intent" by Long Point Capital Fund III "to hinder, delay, or defraud" EYP's creditors.  None of the Complaint's seven paragraphs that reference Long Point Capital Fund III allege *anything* about the entity's intent.  *See* TAC ¶¶ 3, 25, 27, 38, 44, 105, 187.  Nor do Plaintiffs specifically seek to infer intent based on any "badges of fraud."  *See In re Tribune Co. Fraudulent Conveyance Litig.*, 2017 WL 82391, at *13 (S.D.N.Y. Jan. 6, 2017).  At most, Plaintiffs make conclusory allegations about "the lack or inadequacy of consideration," *id.*, but those cannot support an actual intent to defraud where, as here, "[n]othing was done in secret"—the LPC Share Sale was disclosed to each Merger Participant Plaintiff *before* they agreed to participate in the ESOP Merger—and "there were no familial or personal relationships between the [tranferror and transferee] parties" Fund III and the ESOP.  *In re Marketxt Holdings Corp.*, 361 B.R. 369, 396–97 (Bankr. S.D.N.Y. 2007); *see also In re Hechinger Inv. Co. of Del.*, 327 B.R. 537, 551 (D. Del. 2005) (finding no intentional fraudulent conveyance where there was no evidence that the defendants kept the transaction a secret).

With respect to claims for constructive fraudulent transfer, Plaintiffs must plead that: (1) "the transfer in question was made for less than fair consideration," and (2) "the transferor was rendered insolvent as a result of that transfer."  *Ki-Poong Lee*, 2016 WL 6806247, at *5 (citation and quotations omitted).  But here, Plaintiffs plead no facts regarding what the allegedly fair value of the shares was (*i.e.*, the amount by which the per-value consideration received by all merger participants exceeded the value of the shares), nor any facts supporting the assertion that the 2016 ESOP Transactions "rendered EYP insolvent or left it with small capital such that it would be unable, if required, to pay its debt" on Plaintiffs' notes.  TAC ¶ 215.  Tellingly, Plaintiffs offer no explanation for how any EYP entity could have been rendered insolvent as of

the closing date of the 2016 ESOP Transactions when the company has continuously done business throughout the nearly five years since the transaction.  Plaintiffs' allegations merely "recite the statutory elements without offering sufficient factual support," and are insufficient to state a claim for constructive fraudulent transfer.  *Ki-Poong Lee*, 2016 WL 6806247, at *5–6 (granting motion for judgment on the pleadings); *see also In re Trinsum Grp.*, 460 B.R. at 392 (holding that complaint providing net income figures, net cash flow figures, and revenue decline percentage figures for 2003 through 2008 did not sufficiently allege the debtors were insolvent at time of or rendered insolvent by alleged fraudulent transfers).

## V.      Contractual Limitations Aside, the Remaining Counts Fail as a Matter of Law.

Plaintiffs' remaining claims are baseless.  *First*, their claim of unjust enrichment must be dismissed because valid contracts govern the subject matter.  *Vichi v. Koninklijke Philips Elecs. N.V.*, 62 A.3d 26, 58 (Del. Ch. 2012) ("It is a well-settled principle of Delaware law that a party cannot recover under a theory of unjust enrichment if a contract governs the relationship between the contesting parties that gives rise to the unjust enrichment claim.").  Plaintiffs' rights are as set forth in the Merger Agreement and the notes that each received or re-renegotiated.  *See* Exs. 1-14.  Plaintiffs also either received the same per-share value for their EYP Holdings' shares as Long Point did or separately negotiated their own deals (including ones expressly disclaiming Plaintiffs' receipt of "fair value"), *see supra* 5–6, and thus it can hardly be said that the LPC Defendants were unjustly enriched at Plaintiffs' expense.

*Second*, Plaintiffs fail to plead a cause of action for civil conspiracy because there is no independent cause of action for civil conspiracy under Delaware law.  *77 Charters, Inc.*, 2020 WL 2520272, at *23 ("Civil conspiracy is not an independent cause of action and, as such, the gravamen of an action in civil conspiracy is not the conspiracy itself but the underlying wrong which would be actionable absent the conspiracy") (quotations omitted).  Additionally, there is

no private cause of action for conspiracy to commit securities fraud under Section 10(b) and Rule 10b–5. *Dinsmore v. Squadron, Ellenoff, Plesent, Sheinfeld & Sorkin*, 135 F.3d 837, 842 (2d Cir. 1998) ("we decline to imply a cause of action for conspiracy to violate § 10(b) and Rule 10b–5"). Nor does the TAC plead any of the required elements of conspiracy, let alone to the level of specificity required by Rule 9(b). *See, e.g., Filler v. Hanvit*, 2003 WL 22110773 at *3 (S.D.N.Y. Sept. 12, 2003) ("[C]onspiracy to defraud [is] subject to the same pleading requirements under Rule 9(b) . . . ."). For example, the TAC never identifies the allegedly conspiratorial agreement, which LPC Defendants were purportedly party to it, with whom, and when, and what overt acts that any LPC Defendants took to further it. *See Marino v. Grupo Mundial Tenedora, S.A.*, 810 F. Supp. 2d 601, 610 (S.D.N.Y. 2011) (noting that New York law conspiracy requires "(1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury"); *77 Charters, Inc.*, 2020 WL 2520272, at *23 (similar under Delaware law).

*Third*, reformation and constructive trust are equitable remedies, not substantive causes of action. *Dodge v. Wilmington Tr. Co.*, 1995 WL 106380, at *7 (Del. Ch. Feb. 3, 1995) ("This count is actually a request for a specific remedy, as it relies on the fraudulent conduct alleged in the other counts as the basis for establishing a constructive trust."). Additionally, Plaintiffs seek to "subordinat[e] the rights of Long Point [Capital, Inc. and] Starr" and not any other LPC Defendant "below those of all of the redemption, Group 1 and Group 2 noteholders," TAC ¶ 230, but that relief is nonsensical. The LPC Note belongs to the Fund III Defendants. Neither Long Point Capital, Inc. nor Starr received anything from the 2016 ESOP Transactions, and thus there

are no rights of those defendants that would warrant subordination through the reformation that Plaintiffs seek.

## CONCLUSION

For the foregoing reasons, the LPC Defendants respectfully request that this Court dismiss the Plaintiffs' claims with prejudice.

Dated: New York, New York
      April 13, 2021

COVINGTON & BURLING LLP

By:  *S/ Jonathan M. Sperling*
      Jonathan M. Sperling

Christopher Y. L. Yeung
The New York Times Building
620 Eighth Avenue
New York, New York 10018-1405
(212) 841-1000
jsperling@cov.com
cyeung@cov.com

*Attorneys for Defendants Long Point Capital, Inc., Long Point Capital Fund II, L.P., Long Point Capital Partners II, L.P., Long Point Capital Fund III, L.P., Long Point Capital Partners III, L.P., Ira Starr, Norman Scherr, and Eric Von Stroh*